JOHN GRETHER et al., Respondents, v. SAMUEL T. McCORMICK, Appellant.

**St. Louis Court of Appeals, March 21, 1899.**

**Commission of Broker on Sale of Real Estate:** EXCHANGE. In the case at bar the evidence shows that the defendant agreed to pay to plaintiffs five per cent commission if they would sell or find a purchaser for his farm; that the defendant's city agents and the purchaser were brought together by and through the instrumentality of plaintiff while acting for and on behalf of defendant. Held, that plaintiffs were entitled to their commissions, and, held, further, that the fact the farm was not sold, but exchanged for other real estate by the defendant's general agents, does not deprive the plaintiffs of their right to a commission on the value of the property taken in exchange.

*Appeal from the St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

AFFIRMED.

RASSIEUR & RASSIEUR for respondents.

A real estate broker is entitled to his commissions if he is the procuring cause of the negotiations which resulted in the sale, even though the negotiations are conducted and concluded

by the principal in person.    Bell v. Kaiser, 50 Mo. 15; Tyler
v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638;
Gelatt v. Ridge, 117 Mo. 553; Blackwell v. Adams, 28 Mo.
App. 61; Jones v. Berry, 37 Mo. App. 125; Bass v. Jacobs, 63
Mo. App. 393.    This is true, even though another broker
concluded the sale.    Wright v. Brown, 68 Mo. App. 577;
Brennan v. Roach, 47 Mo. App. 290.    And the broker is
entitled to his commissions under such circumstances, even
though the terms of sale have been varied and the price ac-
cepted is lower than the limit at which he was authorized to
sell.    Stinde v. Blesch, 42 Mo. App. 578; Wetzell v. Wag-
oner, 41 Mo. App. 509; Henderson v. Mace, 64 Mo. App. 393.

DAWSON & GARVIN for appellant.

There is a total failure of proof of the contract alleged.
Huston v. Tyler, 140 Mo. 252, and cases cited on pages 263
and 264.    The unconflicting testimony of both parties showed
an oral agreement, made on February 5, 1895, to pay five per
cent commission for a sale of defendant's farm to a supposed
purchaser, then in hand, for $45,000, on the usual terms, viz.,
one-third cash, balance in one and two years, secured by deed
of trust on the farm.    Which was not in law a general or con-
tinuing contract of employment, but one to be executed within
a reasonable time.    Steadman v. Richardson, 37 S. W. Rep.
(Ky.) 259; Page & Austin v. Griffin, 71 Mo. App. 524.    The
contract of February 5, 1895, was never performed by the
plaintiffs, and they can not recover thereon.    Warren v. Cram,
71 Mo. App. 638.    No modification of this contract is alleged
or proven.    The plaintiffs' letter to defendant in California,
dated September 14, 1896, to the effect that they had some
St. Louis property therein described, which the owner wished
to exchange for a good farm, is in no sense a performance.
Davis v. Gassette, 30 Ill. App. 44.    The defendant's exchange
of his farm and personal property valued at $1,200 and $800
in cash for this property, subject to an incumbrance of $16,000

does not tend in law or in fact to show a performance of the contract of February 5, 1895, or a waiver of such performance. Blackwell v. Adams, 28 Mo. App. 61; Reiger v. Bigger, 29 Mo. App. 421. Gilbirds was not accepted at the hands of plaintiffs. Wolff v. Rosenberg, 67 Mo. App. 403. The trade made was procured by Darst, and not by the plaintiffs. Ward v. Fletcher, 124 Mass. 224; Randrup v. Schroeder, 46 N. Y. Sup. 943; Campbell v. Vanstone, 73 Mo. App. 87; Crowley v. Summerville, 70 Mo. App. 376; Earp v. Cummings, 54 Pa.St. 394. Plaintiffs' volunteered information was not used by defendant. Plaintiffs did not succeed in getting defendant to consider or reconsider a trade favorably. Rumsey v. West, 31 Mo. App. 676.

BLAND, P. J.—The charging part of the petition is as follows, "to wit, on or about the 5th day of February, 1895, the defendant McCormick employed the said copartnership of John Grether & Co. as his agent to negotiate for the sale or disposition of two certain pieces, parcels or tracts of land which he, defendant, then owned, distant about one mile from Bowling Green in the state of Missouri, and composed of eight hundred and fifty acres, one hundred and twenty acres thereof distant about one quarter of a mile from the main body of said land, with certain improvements thereon, said property consisting of farm property, and which said defendant valued at $50,000. That defendant upon employing the said copartnership of John Grether & Co. authorized it to negotiate for the disposition of his said tracts of land, and that the said copartnership did thereupon endeavor so to do. Plaintiffs state that while the said employment still existed their said firm, in or about the month of September, 1896, ascertained that one John F. Gilbirds owned or controlled a certain piece or parcel of land lying and being in city block No. 3801 of the city of St. Louis, Missouri, and consisting of lots numbered from one to eleven, inclusive, in said block, having together an aggregate front of five hundred and ninety-two feet six

inches on the north line of Page boulevard and a front on the
south line of Minerva avenue of five hundred and ninety-two
feet and six inches, with a front on the west line of Arlington
avenue of four hundred and sixty-seven feet and six inches,
and a front on the east line of Belt avenue of four hundred and
sixty-seven feet and six inches, all of said distances being more
or less, the title to which tract or piece of land was then either
in the said Gilbirds or at his disposition and control. That
plaintiffs also ascertained that the said Gilbirds valued said
property at $60,000, and that there was an incumbrance
thereon of about $16,000, and through their efforts plaintiffs
also ascertained that the said Gilbirds was willing to make an
exchange of said property for the said property of defendant
so placed in the hands of plaintiffs' said firm as aforesaid. That
thereupon plaintiffs called attention of defendant to said
city of St. Louis property and the probability of
being able to secure the same for defendant for
his said farming property near Bowling Green, and
endeavored to bring about an exchange thereof. That
in consequence of plaintiffs' said services defendant was
brought into contact and negotiation with said Gilbirds, and
that the result thereof was an exchange of said properties, the
defendant receiving and accepting said St. Louis property for
and in exchange for his said farm, at a valuation of $60,000,
defendant assuming as a part of the consideration an incum-
brance of $16,000 thereon. And plaintiffs state that they
were the inducing or procuring cause which enabled defend-
ant to so dispose of his said farm property for said St. Louis
property, and that said disposition and exchange resulted from
their bringing defendant into contact and negotiations with
said Gilbirds. That defendant on employing plaintiffs' said
firm agreed to pay plaintiffs' firm a commission of five per cent
on the valuation of his said property, and that plaintiffs are
entitled, therefore, to recover from defendant the sum of
$2,200, which amount defendant owes them by reason of the

aforesaid commission." The answer was a general denial. On trial plaintiffs recovered a judgment for $2,200, from which defendant appealed.

The facts as disclosed on the trial are, that defendant owned the farm and Gilbirds the city property described in the petition, and that an exchange of the one for the other was made by McCormick and Gilbirds at the valuations and on the terms stated in the petition; this exchange was consummated late in December, 1896. On and prior to February 5, 1895, McCormick had placed his farm lands in the hands of the McCormick, Kilgen & Rule Real Estate Company as his general agent for sale, and it remained in the hands of this company until the exchange was made. In response to a letter written him by the plaintiffs, defendant called at their real estate office on or about February 5, 1895, when plaintiffs told defendant they thought they had a man who wanted just such a farm as his, and asked his price; defendant priced his farm at $45,000, and agreed to pay plaintiffs five per cent commission if they could sell it or find a purchaser at $45,000, at the same time telling them that the McCormick, Kilgen & Rule Real Estate Company had his farm for sale, and that he would not withdraw it from that company; that they would have to look to that company to close any deal they might make. Plaintiffs failed to make a sale to their prospective purchaser or to find any purchaser for cash. In September, 1896, the attention of one of the plaintiffs was called to the Gilbirds property by a newspaper advertisement, and to the fact that Gilbirds desired to exchange it for an improved farm, and on the fourteenth of said month wrote defendant, then in the state of California, as follows:

St. Louis, September 14, 1896.
"Mr. S. T. McCormick, Monterey, Cal.

"Dear Sir:—We have an entire block of ground in Rose Hill, of this city fronting 492 feet on Page avenue, 667 feet

on Belt avenue, and fronting the corresponding distance upon Minerva and Arlington avenues, which the owner wishes to exchange for a good farm, thinking this might suit you we write to know how you would regard such an exchange, if you can agree upon value. Kindly send us description of your farm as we can not find our former memorandum.

"Yours truly,

"John Grether & Co."

To this defendant replied as follows:

"Hotel Del Monte, September 19, 1896.

"Mr John Grether, Esq., St. Louis, Mo.

"Dear Sir:—Your favor of 14th in reference to trading my farm for a block of ground in the city was received yesterday evening and carefully noted. In reply will say that I expect to be home about the 6th of October and will call on you then and talk the matter over, meantime I will write my son Harry to call on you in reference to the subject. He knows more about the farm than I do.

"Hoping this will be satisfactory, I remain, Very truly,

"S. T. McCormick."

Gilbirds was informed of this correspondence and thereafter made occasional calls at the office of plaintiffs to make inquiry. In October, 1896, Harry McCormick called on plaintiffs and gave them a description of the defendant's farm and priced the farm at $50,000 instead of $45,000, and stated to plaintiffs that he would have nothing to do with the proposition to exchange and that his father was too ill to look after the matter, and that plaintiffs would have to see the real estate firm of McCormick, Kilgen & Rule, who were his father's agents. Harry McCormick testified that he did not learn from plaintiffs that Gilbirds wanted to trade his city property for his father's farm, but that he did learn that he wanted to trade it for some farm, and that Gilbirds valued his property at $60,000. Gilbirds employed J. C. Darst, a real estate agent,

to push his end of the trade. Darst visited the office of plaintiffs and together Darst and John Grether called at the office of McCormick, Kilgen & Rule, but could find no one there who would talk trade with them, and left the office together, under the impression that Kilgen & Rule would not recommend the trade. Darst, however, said he thought he had best follow the matter up, and did so, and the exchange was finally brought about through the efforts of Darst acting for Gilbirds, and Thompson of the McCormick, Kilgen & Rule Real Estate Company acting for Kilgen & Rule. Gilbirds testified that he first heard of the farm through the plaintiffs and that plaintiffs gave him McCormick's name and a description of the farm, and that he called on them four or five times concerning the matter. The authority first given plaintiffs by McCormick to sell the farm was never revoked, nor was there any subsequent express agreement concerning the sale of the farm modifying the terms of the original contract to sell for $45,000, for a five per cent commission. At the close of all the evidence the defendant offered an instruction in the nature of a demurrer to the evidence, which was refused; he moved to arrest the judgment on the ground that the petition failed to state a cause of action, and his chief reliance for a reversal of the judgment is on the alleged insufficiency of the petition to support it and want of testimony. To say that the petition is inartificially drawn would be an unwarranted criticism of an ingenious pleading. It is most artfully framed to fit the facts of the case. It, in effect, alleges a contract to sell McCormick's farm for a commission, not that the contract that was actually made in particular, but this contract or any other that the evidence might tend to prove, and is sufficient by intendment to embrace the contract that was actually made or the one which the law would imply from the facts which the evidence tended to prove, and under our code of civil procedure is sufficient to support a judgment after verdict. R. S. 1889, sec. 2113;

Garth v. Caldwell, 72 Mo. 622; Revelle v. Railroad, 74 Mo. loc. cit. 442; Mellor v. Railroad, 105 Mo. 455.

The evidence is clear that McCormick agreed to pay plaintiffs five per cent commission if they would sell or find a purchaser for his farm at $45,000, and that this contract was not terminated when plaintiffs wrote defendant the letter of September 14, 1896, and it is evident by McCormick's answer to that letter that he did not decline, but encouraged the services of plaintiffs to exchange his farm for city property, and it is undisputed that Gilbirds and defendant's city agents, Kilgen & Rule, were brought together by and through the instrumentality of the plaintiffs while acting for and on behalf of defendant, in virtue of their original employment and by and with his consent; this under all the authorities in this state is sufficient to entitle plaintiffs to their commission. Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Galatt v. Ridge, 117 Mo. 553; Bass v. Jacobs, 63 Mo. App. 393; Jones v. Berry, 37 Mo. App. 125; Blackwell v. Adams, 28 Mo. App. loc. cit. 63.    The fact that the farm was not sold but exchanged for other real estate, by the defendant's general agents, does not deprive the plaintiffs of their right to a commission on the value of the property taken in exchange. Henderson v. Mace, 64 Mo. App. 393; Wetzell v. Wagoner, 41 Mo. App. 509; Stinde v. Blesch, 42 Mo. App. 578.

The assignment of errors relied on by the appellant for a reversal are ruled against him, and the judgment is affirmed. All concur.