JOHN T. PERRY, Respondent, v. JAMES EDELEN
et al., Appellants.

St. Louis Court of Appeals, March 3, 1914.

1. **REAL ESTATE BROKERS:** Action for Commission: Sufficiency of Evidence. In an action by a real estate broker to recover a commission for effecting the exchange of properties, evidence that the broker was merely employed to find some one who was willing to exchange his property for the owner's property and that he procured a customer with whom the principal thereafter actually consummated such an exchange, made a prima facie case.

2. ———: ———: Transaction Different from that Authorized. Where a real estate broker departs from the terms of his original authority, the owner's adoption of his negotiations and completion of the transaction operates as a ratification of his

acts; the original undertaking being regarded as modified thereby.

3. ——: ——: ——. A real estate broker was employed to find a person who was willing to trade a farm for a stock of goods, a store building and one residence, the owner desiring to make his own trade, and merely employing the broker to put him in touch with some one with whom he might conduct the negotiations. The broker having procured a prospective customer, suggested, in order that the values might be equalized, and to avoid the necessity of making a cash payment, that the owner include another residence in the trade, and the exchange was made on that basis. *Held*, that the point made by the owner, that the broker was not entitled to recover, for the reason that the exchange actually made varied both in price and in the thing sold from the exchange authorized, was not tenable, since the broker was employed merely to put the owner in touch with some one who might be induced to trade for his property and the broker completed his undertaking by doing this.

Appeal from Shelby Circuit Court.—*Hon. Nat M. Shelton* Judge.

AFFIRMED.

*S. M. Hutchison* and *V. L. Drain* for appellants.

(1) Under the law respondent was not entitled to recover. His evidence and the averments of his petition show that he never sold the property which he claimed that he was authorized to sell. The fact that the same property was afterward sold by appellants along with other property does not entitle respondent to compensation. Tooker v. Duckworth, 107 Mo. App. 231; Gamble v. Grether, 108 Mo. App. 340; Duncan v. Hills, 155 Mo. App. 702; Dillard v. Field, 153 S. W. 532; Hurxthal v. Dalbey, 153 S. W. 1066. (2) Respondent was not in any sense the "procuring cause" of this sale. At the most, conceding everything claimed by him, he was only one faint contributor to the chain of causes which led up to this exchange as finally made. For this reason the peremptory instruction asked by appellants should have been given, and for the same reason the court erred in modifying the instructions

asked by them, and in giving the instruction on behalf of respondent. Crain v. Miles, 154 Mo. App. 338; Gerhardt v. Real Estate Co., 144 Mo. App. 620; Russell v. Poor, 133 Mo. App. 723; Dillard v. Field, 153 S. W. 433. (3) The whole record shows a combination between Mitchell, the agent of the purchaser, and respondent, who claims to have represented appellants. Such a condition should bar any recovery in this action. Chapman v. Currie, 51 Mo. App. 40; Norman v. Roseman, 59 Mo. App. 682. (4) Appellant's demurrer should have been sustained upon the evidence of respondent, who admitted that at the time that he called the attention of T. D. Mitchell to the property of appellants, he did not have authority to sell or exchange any of the real estate. This action was neither brought nor tried upon any theory of estoppel and therefore there is no such a question in the case. Loving Company v. Hesperian Cattle Co., 176 Mo. 330; Bassford v. West, 124 Mo. App. 248.

*Jno. D. Dale,* for respondent; *Guthrie & Franklin* and *Humphrey & Gose* of counsel.

(1) If property is put into the hands of a real estate agent to sell, he is entitled to his commission if the sale be brought about by his advertisements or exertions, or if he introduce the purchaser to the seller, or disclose his name to the seller, and through such introduction or disclosure the sale is effected, even though the sale may be made by the owner. Tyler v. Parr, 52 Mo. 249; Henderson v. Mace, 64 Mo. App. 393; Smith v. Truitt, 106 Mo. App. 709; Nichols v. Whitacre, 112 Mo. App. 695; Gelatt v. Ridge, 117 Mo. 553; Glade v. Mining Co., 129 Mo. App. 443; Cole v. Crump, 156 S. W. 770; Werdmeyer v. Woodrum, 154 S. W. 895; Park v. Culver, 154 S. W. 807.

ALLEN, J.—This is an action by a real estate broker to recover a commission for the exchange of

certain property belonging to defendants. Plaintiff re-
covered and the defendants prosecute the appeal.

The evidence shows that plaintiff, Judge Perry,
residing in Shelbyville, Missouri, was engaged in busi-
ness as a real estate broker at the date of the matter
here in controversy, and that the defendants, as co-
partners, then owned and conducted a general mer-
chandise store in Shelbyville, defendant James Edelen
appearing to be the principal party in interest. Plain-
tiff's evidence goes to show that about May, 1910, de-
fendant James Edelen stopped plaintiff upon the street
and told him that he (Edelen) wanted to trade his stock
of goods, stating reasons therefor, and asked if plain-
tiff had anything that could be traded for the same;
that plaintiff told him he had not; and that said de-
fendant thereupon asked plaintiff if the latter would
look for something for which he could trade, saying
that he was anxious to "trade out, owing to the con-
ditions;" that plaintiff thereupon took out of his pocket
an advertisement of one T. D. Mitchell & Company,
advertising two or three farms for sale or trade, and
asked whether these would be considered; that this
defendant said he would not consider any farm outside
of Shelby county, and further said: "Now remember,
I don't ask you to make any trade for me. What I
ask you to do is to find some one willing to trade. I
will make the trade myself, and I will pay you the com-
mission. Remember, I don't propose to pay any unrea-
sonable commission, but a reasonable commission I will
pay;" that plaintiff replied that he asked nothing more
than a reasonable commission; that defendant asked
plaintiff if he would undertake to find him a trade,
stipulating, however, that he did not want his business
advertised for trade or sale, because it would injure
the business, that he had a good business, and that
plaintiff could so represent it, but that he did not want
people generally to know that it was for trade.

Plaintiff further testified that some days later he called Mr. Edelen's attention to a farm that one Mitchell had purchased and which it is said he wanted to trade for a stock of goods, and which it seems was in Shelby county, some three miles from Hunnewell; that at Edelen's request plaintiff got in communication with Mitchell, and as a result thereof plaintiff and this defendant went to see the farm. It appears that Edelen and Mitchell were unable to agree upon a trade, however, and that this matter fell through. Plaintiff testified that he wrote various other persons, endeavoring to find a trade for defendant; that the matter went on until about March, 1911, when Mr. Edelen again spoke to plaintiff in regard thereto, saying: "You haven't found me a trade;" and that plaintiff told him that he was keeping on the lookout for something but had not as yet found anything; that Edelen asked him to "get busy" and find something, saying that he was quite anxious to trade, and that he thought that Mitchell might be induced to trade two farms which the latter had in a certain locality, asking plaintiff to undertake to make such deal; that plaintiff replied that he thought that Mitchell would not make such a trade, but that defendant was insistent in the matter, and thereupon plaintiff agreed to go to see Mitchell at Shelbina; that plaintiff first wrote Mitchell and ascertained that the latter had nothing for trade except two hundred and forty acres near Shelbina; that plaintiff shortly thereafter went to see Mitchell, but that the latter declined to trade the farm for the stock of goods.

It appears that Mitchell had in charge another farm of two hundred and forty acres in Shelby county, belonging to one Davidson. Plaintiff testified that Mitchell suggested to him that a trade might be made for this land, but that plaintiff thought the land too rough and that it did not contain enough good land to interest Mr. Edelen; that Mitchell then said that Da-

vidson had another tract of eighty acres which was smoother land, and which had never been offered for trade, but which Davidson might be induced to put into the trade, making about three hundred and twenty acres. Plaintiff further testified that he discussed with Mitchell, tentatively, the exchange of the stock of goods, the store building itself, and a residence owned by defendants, for the farm, and that upon his return to Shelbyville he submitted to Edelen such proposition; that Edelen authorized him to find a trade for the stock of goods and the real property, and agreed to go to look at the Davidson farm, but said that he was unable to go immediately, and put the matter off, saying that he would let the plaintiff know about it; that plaintiff received no word from Edelen, but that shortly thereafter the latter got in communication with Mitchell, went to see the farm and agreed to make the exchange. It appears that the deal was consummated on April 11, 1911, by a written contract of that date, whereby the defendants agreed with Davidson to exchange for the latter's farm, consisting of three hundred nineteen and one-half acres, the stock of goods in question, the store building itself, and *two* residences in Shelbyville. In making the deal the farm was valued at one hundred dollars per acre, a total of $31,950; and defendants' property was valued as follows: The store building at $6000; one dwelling and premises at $2700; another dwelling and premises at $2500, and the stock of goods at the invoice value thereof.

It is undisputed that this trade was actually made. And plaintiff's testimony is to the effect that after he had told the defendant, James Edelen, about the Davidson farm he was unable to get said defendant to go with him to see the farm, but that the latter put him off, and in the meantime went to see Mitchell, looked over the Davidson farm and consummated the trade. Plaintiff further testified that when he submitted the proposition to defendant, James Edelen, to exchange the

stock of goods, store building and one residence for the Davidson farm, this defendant said that he thought that it was "too big a trade," and that he was unwilling to put in cash to consummate it; and that plaintiff thereupon suggested that there was an indebtedness upon the farm, which it seems in fact was $6500, and that in lieu of cash another piece of residence property, which defendants owned, might be put in. And, as we have said, it is not disputed that the trade was ultimately consummated along such lines.

Mitchell, testifying as a witness for plaintiff, fully corroborated plaintiff's version of what took place between him and plaintiff; and testified that thereafter defendant, James Edelen, got into communication with him, called to see him, and that they together went to see the Davidson farm, and that the trade was ultimately consummated without taking plaintiff into further consideration.

Defendant, on his part, denied flatly that he had ever given plaintiff any authority to trade his stock of goods or any other property, denied the conversations alleged by plaintiff to have taken place between them, and declared that plaintiff had nothing to do whatsoever with the making of the exchange of his property for the farm in question. He admitted having gone in company with plaintiff to see the farm near Hunnewell, but said that he thought that plaintiff "was going for Mitchell."

There is evidence in the record relative to a claim made against defendants by Mitchell for commissions (which it is said was made in behalf of plaintiff), and relative to a former suit brought by plaintiff, which was dismissed; but it is unnecessary to rehearse or consider this evidence.

It cannot be doubted, we think, that plaintiff's evidence tended very strongly to show that his efforts were the procuring cause of the exchange of defendant's property, making this a question for the jury.

The showing made by plaintiff, to the effect that he was authorized, not to sell or exchange at any particular price, and in fact not to consummate the deal himself at all, but to find some one willing to make an exchange of other property for defendant's property, and that he found a customer with whom defendants thereafter actually consummated such an exchange, was sufficient to make out a prima-facie case on his part. [See Coffman v. Dyas Realty Co., 176 Mo. App. 692, 159 S. W. 842.]

But appellants insist that plaintiff cannot recover, for the reason that it appears that he was, at most, authorized only to exchange the stock of goods, store building and *one* residence, whereas the property exchanged by defendants included the foregoing and also another residence; that the exchange actually made varied both in price, or consideration, and in the thing sold; and that therefore there can be no recovery by the agent. And in respect to this, defendants rely greatly upon Tooker v. Duckworth, 107 Mo. App. 231, 80 S. W. 963. But that case is not authority for appellant, under the facts appearing in this record; whatever may have been said in the course of the opinion. There the owner's contract with the agent was to pay the latter one hundred dollars if he would find a buyer for a stock of goods at the specified price of $2200. There was no performance by the agent, in accordance with the terms of the special contract. The prospective purchaser whom he found would not consider the proposition made to him, and the matter was abandoned. Later the owner consummated a deal with such purchaser, by buying an adjoining lot and selling to him both the stock of goods and the lot.

In the instant case plaintiff's right to recover is not restricted or limited by any such special contract between the parties. According to plaintiff's evidence, the contract was in quite general terms, by which plaintiff was authorized and required merely to find some

one willing to trade for defendants' property. And it is said that defendant, James Edelen, desired to make his own trade, and merely wished plaintiff to put him in touch with some one with whom he might conduct the negotiations. It is true that in the beginning it was only the stock of goods that plaintiff was authorized to handle. It seems, however, that later his authority was extended to include the store building and one residence—or at least that defendants approved of his attempt to exchange all of the same for other property—and that plaintiff also suggested putting in another residence, in making the trade, to balance or equalize the values, and avoid making a cash payment. And defendants actually made the exchange of all of the latter property for the Davidson farm. Therefore it appears from plaintiff's evidence that he performed, on his part, all that he was required to perform under his contract and undertaking. Had he been required to find a purchaser for a specific piece of property at a specific price, in order to earn his commission, the matter would be an altogether different one.

In this connection appellants also cite: Duncan v. Hills, 155 Mo. App. 702, 135 S. W. 450; Dillard v. Field, 168 Mo. App. 206, 153 S. W. 532; Hurxthal v. Dalbey, 168 Mo. App. 538, 153 S. W. 1066. But an examination of such cases will reveal that they are likewise not authority for appellants under the facts of this case. In fact, in Dillard v. Field, supra, it is well said by TRIMBLE, J., that, "In order to solve the puzzling and somewhat difficult question whether an agent is entitled to his commission, two questions should be steadily kept in mind: '1st, what was the agent authorized or employed to do? 2nd, has he completed his undertaking?'"

In the case before us the evidence on behalf of plaintiff is to the effect that he was authorized or employed merely to put defendants, or defendant, James

Edelen, in touch with a person or persons who might be induced to trade for defendants' property, and that plaintiff completed his undertaking by doing this. And the fact that defendants, in consummating the trade, put in an additional residence in order to equalize the values, and to avoid a cash payment, does not, under the circumstances here shown in evidence, defeat plaintiff's right to a commission for the exchange of the property to which his authority actually extended. It is for the exchange of such property that plaintiff is seeking to recover a commission. The fact that a sale or exchange effected by a real estate broker does not conform literally to his original authority, does not prevent the recovery of a commission by him, if such sale or exchange is ratified by his principal. Though the agent departs from the terms of his original authority, if the owner subsequently adopts his negotiations and completes the transaction, the same operates as a ratification of the agent's acts, and the original undertaking is to be regarded as modified by such ratification. [See Duncan v. Turner, 171 Mo. App. 670, 154 S. W. 816.]

It is also urged that plaintiff's efforts were in no sense the procuring cause of the sale, but constituted merely a link in the chain of causes and not the *causa causans*. But we think that this contention is entirely without merit. And a discussion of the cases cited to this point would here serve no useful purpose. The fact is that if plaintiff's version of the matter be true, his efforts were the procuring cause of the exchange ultimately made by the defendants; plaintiff having, at the request of defendant, James Edelen, found someone willing to exchange for defendants' property a farm acceptable to them, and having disclosed to defendants the person having charge of such farm and the location of the latter, whereby defendants were enabled to carry the transaction to its ultimate conclusion. If, on the other hand, defendants'

testimony is to be believed, plaintiff was not the procuring cause of the exchange, and had nothing whatsoever to do with the transaction in question. Manifestly the matter resolved itself purely into a question of fact for the jury, which is now concluded by the latter's verdict.

Other questions involved are in effect disposed of by what we have said above, and need not be separately discussed. An examination of the instructions given and refused has revealed no reversible error. It is not disputed that the amount sued for and recovered by plaintiff, to-wit, $500, is a reasonable broker's commission in such a transaction.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.