D. M. JENNINGS et al., Appellants, v. J. S. OVERHOLT, Respondent.

St. Louis Court of Appeals, January 5, 1915.

1. REAL ESTATE BROKERS: Employment: Sufficiency of Evidence. In an action by a real estate broker for a commission for having procured an exchange of land, evidence *held* to show that defendant engaged plaintiff to find some one with whom he might make a trade or deal to dispose of his land.

2. ———: Right to Commission: Special Contract. Under a special contract requiring a real estate broker to dispose of

property upon certain terms, the owner may, in good faith, insist upon the exact price or the fulfillment of other terms of the contract, and refuse to sell to the broker's customer on modified terms, and if the broker, after full opportunity, fails to perform, the owner, as a new deal, may sell the property to the broker's customer on more favorable terms, without incurring liability for a commission; but if the owner deals with the broker's customer at a lower price or upon other terms, while the agency continues and the broker is working with the customer on the contract terms, the owner will be liable for a commission.

3. ———: ———: **Exchange of Land.** A real estate broker, authorized generally to effect an exchange of land, but not to fix the terms, who put defendant in communication with a landowner with whom defendant made an exchange, was entitled to a commission, notwithstanding the trade effected differed from the one suggested by the broker to his customer.

4. **EVIDENCE: Original Memoranda: Res Gestae.** A minute or memorandum in writing, made in the usual course of business, at the time when the fact recorded took place, is admissible in evidence, if authenticated by the oath of the party making it, when the surrounding circumstances make it probable that the fact recorded occurred; and hence, in an action by a real estate broker for a commission for having procured an exchange of land, his entry in a small book carried in his pocket, made in defendant's presence, when he suggested that defendant see the party with whom the exchange was finally made, and in the usual course of business, was admissible as part of the *res gestae*.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED.

*Arthur Bruton* and *E. S. Gantt* for appellants.

(1) The court erred in excluding plaintiffs' exhibit number 7. Borgess Inc. Co. v. Veete, 142 Mo. 560; Anchor Milling Co. v. Walsh, 108 Mo. 277; Robinson v. Smith, 111 Mo. 205; Weels v. Hobson, 91 Mo. App. 379; Gulurulator v. Rettalaclo, 86 Mo. App. 184. (2) The court erred in modifying plaintiffs' instruction number 1 and refusing plaintiffs' instruction num-

ber 2.  Grether v. McCormick, 79 Mo. App. 329; Wetzell & Griffith v. Wagoner, 41 Mo. App. 509; Hovey & Brown v. Aaron, 133 Mo. App. 573; McCormick v. Obanion, 168 Mo. App. 606; Lane v. Cunningham, 171 Mo. App. 17.  (3)  The court erred in giving defendant's instructions numbers 1, 2 and 4.  (4)  The verdict is against the evidence and the weight of the evidence.

*E. C. Anderson* for respondent.

(1)  There was no error committed on the part of the trial court in excluding plaintiffs' exhibit number 7.  17 Cyc. 380; Daum v. Neumeister, 2 Mo. App. 597; Gregory v. Jones, 101 Mo. App. 270.  (2)  The trial court committed no error in modifying plaintiffs' instruction number 1, and refusing plaintiffs' instruction number 2.  28 Mo. App. 61; 162 Mo. App. 284; 164 Mo. App. 454; 168 Mo. App. 606.  (3)  The trial court committed no error in giving defendant's instructions numbers 1, 2 and 4.  Ramsey v. West, 31 Mo. App. 676; Real Estate Co. v. Real Estate Co., 144 Mo. App. 620; Crain v. Miles, 154 Mo. App. 338; Duncan v. Hills, 155 Mo. App. 702; 19 Cyc. 257.  (4)  The verdict is supported by the evidence and the weight of the evidence.  State v. Espenschied, 212 Mo. 215; State v. Fraught, 140 Mo. App. 369.

ALLEN, J.—This is an action by a firm of real estate brokers to recover a commission as for having procured an exchange of lands of the defendant for other lands.  The trial before the court and a jury resulted in a verdict and judgment for defendant, and the case is here upon plaintiffs' appeal.

Plaintiffs conducted a real estate business in Centralia, Missouri, and on April 18, 1911, defendant, then residing in Texas, where he owned 320 acres of land, wrote plaintiffs asking for a list of farm lands for

sale near Centralia, and inquiring whether plaintiffs had for sale a farm for which his land in Texas might be taken in part payment. To this communication plaintiffs promptly replied, and further correspondence passed between the parties during the early part of 1911. And in July, 1911, defendant made a trip to Missouri, at which time he called upon plaintiffs in regard to disposing of his land. During this period, however, nothing was found to suit defendant as an exchange for his property.

In January, 1912, defendant rented a farm about four miles north of Centralia, the lease for which was drawn in plaintiffs' office, and early in March of this year he moved from Texas to this farm. Upon arriving in Centralia he procured plaintiffs' assistance in making out a claim for alleged freight overcharges; and plaintiffs' evidence is, that at this time the defendant said to them: "As I have moved to your country, I want you fellows to get busy and get rid of my 320 acres in Texas," urging the plaintiffs to "go after it hard," and saying that he wanted "a deal;" and that plaintiffs assured him that they would do the best that they could in the premises. And the testimony for plaintiffs is, that they listed defendant's land in their office, and that defendant agreed to pay the usual commission for selling or exchanging such land.

On March 29, 1912, one of the plaintiffs, L. C. Jennings, met defendant in Centralia and suggested to him that a deal might be made with one Robert Angell, living a few miles north of the farm which defendant had rented, and who was contemplating moving to Texas. It appears that Angell owned two tracts of land in that vicinity, one of fourteen acres and the other of eighty acres, and that the fourteen acre tract had been listed with plaintiffs for sale. Plaintiff, L. C. Jennings, testified that he mentioned both tracts to defendant when he suggested that the latter see Angell, saying, however, that he did not know whether

Angell would part with the eighty acre tract. This plaintiff testified that defendant told him to "go ahead and push the deal," and that he thereupon, in defendant's presence, made an entry of the matter in a small book which he carried in his pocket, and that on the same day he wrote Angell in regard thereto. This letter, which merely refers to an exchange of Angell's "place" for land near Plainview, Texas, was introduced in evidence.

It appears, both from the testimony of plaintiff, L. C. Jennings, and from that of Angell's son, that upon recepit of the last-mentioned letter Angell had his son call this plaintiff by telephone and ask him to bring the defendant to see Angell's property. And the testimony of this plaintiff is, that he tried to reach the defendant by telephone during the next two days, without success, and then called Angell by telephone saying that he had not been able to reach the defendant but that he would go by defendant's house and try to get him, whereupon Angell said that the defendant was then at his house; that Jennings then said that he would come to Angell's house, but was told that this was unnecessary. It appears that the defendant and Angell promptly entered into a tentative agreement for the exchange of defendant's land in Texas for the eighty acre tract belonging to Angell; that the latter at once left for Texas to inspect defendant's property, and that upon his return the trade was consummated.

Angell testified that he first heard of defendant through the plaintiffs; and that during his negotiations with defendant the latter "put up a plea" that he might have to pay plaintiffs a commission. And his further testimony, as well as that of another witness and that of plaintiff, L. C. Jennings, tended very strongly to show that defendant expected to be charged a commission by plaintiffs, and understood that he was liable therefor, but that in the end he objected to the amount of the same.

There was evidence that the usual commission for the sale or exchange of such Texas lands was $1 per acre. After the consummation of the trade plaintiffs demanded a commission of $320, which defendant declined to pay, and this suit was instituted to recover the same.

Defendant testified that he "never considered" that he listed his land with plaintiffs, and that he did not agree to pay them a commission. He admitted his prior dealings with plaintiffs, and that on March 29 plaintiff, L. C. Jennings, suggested a trade with Angell, but said that Jennings only mentioned Angell's fourteen acre tract, and that plaintiffs had nothing to do with the deal made for an exchange of defendant's land for the eighty acre tract. Some testimony was adduced to the effect that defendant had previously heard that Angell was intending to move to Texas, and might want to trade for Texas land, but if this be true it is certain that defendant did not act upon such information at all prior to March 29, 1912, when plaintiffs suggested a trade with Angell, and that almost immediately thereafter defendant saw Angell and consummated the exchange.

The theory of the defense was, that defendant was not liable to plaintiffs in the premises, if the latter, in suggesting a trade with Angell, mentioned to defendant only the fourteen acre tract and if their efforts in respect to a trade with Angell were directed only to an exchange of defendant's land for this fourteen acre tract. This theory the court adopted and pursued in submitting the case to the jury. One instruction requested by plaintiffs was refused, as requested, but was given after being modified so as to tell the jury that plaintiffs could not recover unless it was found "that plaintiffs' effort to bring about an exchange of land between defendant and Angell related only to the fourteen acre tract and not to the eighty acre tract." And an instruction requested by

plaintiffs was refused which allowed a recovery, upon a finding of certain facts, though defendant took in exchange for his land other land belonging to Angell than that mentioned to him by plaintiffs. And the two instructions given for defendant proceeded upon the above-mentioned theory adopted by the court.

It is unnecessary to set forth these instructions in detail, for the reason that it is quite clear that the court's rulings with respect to the giving and refusing of instructions were based throughout upon an erroneous impression of the law applicable to the situation in hand. And it is clear that the argument here advanced by learned counsel for respondent in support of the court's rulings in the premises is unsound.

The evidence is abundant that defendant engaged plaintiffs to find someone in the vicinity of Centralia with whom he might make some trade or deal whereby to dispose of his Texas land. And the evidence is almost, if not, conclusive, that plaintiffs' efforts in the premises were the procuring cause of the trade actually consummated by the defendant.

In Dillard v. Field, 168 Mo. App. 206, 153 S. W. 532, it is quite well said by TRIMBLE, J.: "In order to solve the puzzling and sometimes difficult question whether an agent is entitled to his commission, two questions should be steadily kept in mind: '(1) What was the agent authorized or employed to do? (2) Has he completed his undertaking?'" In the case before us it is quite clear that plaintiffs were not employed under a special contract requiring them to dispose of defendant's property upon certain prescribed terms, nor in fact to consummate any deal. Where a special contract exists, it is elementary that the broker must show that he has fully complied with the terms and conditions thereof before he is entitled to recover, for otherwise he has not completed his undertaking and has earned no commission. In such a case the owner may, in good faith, insist upon the exact price, or the

fulfillment of other terms of the contract, and refuse to make a sale to the broker's customer on any modified terms; and if the broker fails to perform, after being allowed full opportunity so to do, the owner may in fact thereafter, as a new deal, sell the property to the broker's customer on more favorable terms, without incurring liability to the broker. [Blackwell v. Adams, 28 Mo. App. 61; LaForce v. Washington University, 106 Mo. App. 517, 81 S. W. 209; Tooker v. Duckworth, 107 Mo. App. 231, 80 S. W. 963; Stevens v. Bacher, 162 Mo. App. 284, 141 S. W. 1143; Hughes v. Dodd, 164 Mo. App. 454, 146 S. W. 446; McCormick v. Obanion, 168 Mo. App. l. c. 615, 153 S. W. 267.] But even in such cases if the owner chooses to deal with the broker's customer at a lower price or upon other terms, while the broker's agency remains unrevoked, and he is still working with his customer at the price and upon the terms named to him, the owner will be liable to the broker for commissions upon a sale so consummated by him with the broker's customer. [See Wetzell & Griffith v. Wagoner, 41 Mo. App. 509; Larow v. Bozarth, 68 Mo. App. 407; Grether v. McCormack, 79 Mo. App. 325; Nichols v. Whitacre, 112 Mo. App. 692, 87 S. W. 594; Hovey & Brown v. Aaron, 133 Mo. App. 573, 113 S. W. 718; Lane v. Cunningham, 171 Mo. App. 117, 153 S. W. 525.]

In the instant case the terms of plaintiffs employment were of the most general character. The evidence is that defendant, both by correspondence and orally, solicited plaintiffs' services in the premises; but there is no pretense that plaintiffs were limited by any special contract requiring them to effectuate a disposal of defendant's property upon any stipulated terms. Indeed the evidence adduced in behalf of both plaintiffs and defendant shows clearly that what defendant desired plaintiffs to do, and what they undertook to do, was to find someone in the vicinity of Centralia with whom defendant might be able to make

some sort of a trade for his Texas land. Plaintiffs' undertaking was merely to put defendant in touch with someone with whom he might consummate such a trade. Plaintiffs were not authorized to consummate any deal themselves, but were to direct their efforts to finding someone who would consider exchanging land in that vicinity for defendant's property, leaving it to defendant to make a deal satisfactory to himself if he could. The evidence is that defendant contemplated that it might be necessary for him to assume an indebtedness, in making an exchange, or that there might be a cash difference, one way or the other, between the properties to be exchanged; and much, of course, would depend upon the location, character and value of the Missouri land, and the price at which it was held. With these matters plaintiffs had naught to do; but it was for defendant to make his own bargain, in case plaintiffs found a prospective trader.

Defendant, by letter, had originally stated to plaintiffs that he held his land at $23 per acre. In trading with Angell he put in the 320 acres at $25 per acre (a total of $8000), and took Angell's eighty acres at a valuation of $100 per acre. Under the circumstances of plaintiffs' employment, it was wholly immaterial whether defendant thus traded for the eighty acres, or took Angell's fourteen acres and the cash difference, or sold his land to Angell for cash, or made some other trade with Angell. In any event, if plaintiffs' efforts resulted in finding a customer with whom defendant could deal and were the procuring cause of the trade ultimately consummated, plaintiffs had earned their commission. [See Perry v. Edelen, 181 Mo. App. 498, 164 S. W. 645; Lane v. Cunningham, supra; Grether v. McCormick, 79 Mo. App. 325.]

It follows that the court's rulings as to the instructions were highly prejudicial to plaintiffs, and necessitate a reversal of the judgment.

186MoApp33

A further assignment of error pertains to the action of the court in excluding the entry which L. C. Jennings testified that he made in a small book carried in his pocket when he suggested that defendant see Angell. It appears that such entry was made during this conversation with defendant upon the street, in defendant's presence, and in the usual course of business; that it was the custom of this plaintiff to thus make original entries of this character in this book, which he carried for this purpose. For the guidance of the lower court upon another trial, it may be well to say that we think that the entry was admissible as being a part of the *res gestae*. It is well established that a minute or memorandum in writing, made in the usual course of business, at the time when the fact recorded took place, by one since deceased, is admissible in evidence, when the surrounding circumstances render it probable that the fact occurred. [See Jones on Evidence (2 Ed.), sec. 119.] And in this country, at least, this doctrine has been extended to cases where the person who made the entry is still living, if the same is authenticated by his oath. [Jones on Evidence (2 Ed.), sec. 320.] The principle involved was very fully considered by this court in Milne v. Railroad, 155 Mo. App. 465, 135 S. W. 85, where, in an opinion by Nortoni, J., many authorities are cited and discussed.

The judgment is reversed and the cause remanded, to be proceeded with in accordance with the views expressed above. *Reynolds, P. J.*, and *Nortoni, J.*, concur.