HENRY WESTERMAN, Respondent, v. PEER INVESTMENT COMPANY, Appellant.

St. Louis Court of Appeals, May 8, 1917.

1. **REAL ESTATE BROKERS: Special Contract of Employment: Right to Commission.** In order to entitle a real estate broker to recover a commission for effecting a sale, under a special contract of employment, he must show that he has fully complied with

the terms and conditions thereof, unless the owner does something that operates as a waiver of his right to insist upon its terms. The owner may, in good faith, insist upon the exact price or the fulfillment of other terms of the special contract, and if the broker fails to perform, after being accorded full opportunity to do so, the owner may thereafter, as a separate undertaking, negotiate with the broker's customer and sell to him, even on more favorable terms, without incurring liability for a commission.

2. ———: ———: ———. Where a real estate broker was authorized to sell certain property until a specified date, for a definite sum, but failed to do so, and thereafter the owner sold the property to the broker's customer for a less amount, the broker was not entitled to recover a commission.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED.

*Albert & H. N. Arnstein* for appellant.

A broker whose contract provides that, in order to earn his commission, he must within a given time secure a purchaser of the land at a price fixed, is not entitled to commission even though within the contract time he found a purchaser willing and able to buy at a reduced price and that fact was communicated to the owner, and even though the owner after the expiration of the contract time, closed with the purchaser on such reduced terms. Young v. Stecker Cooperage Works, 259 Mo. 215; Jennings v. Overholt, 186 Mo. App. 505; Wilson v. Rafter, 188 Mo. App. 356, 365; Hogan v. Slade, 98 Mo. App. 44; Page v. Griffin, 71 Mo. App. 524; LaForce v. Washington University, 106 Mo. App. 517; Beauchamp v. Higgins, 20 Mo. App. 514; Mecham Agency, sec. 5965, p. 793; Blackwell v. Adams, 28 Mo. App. 61, 63; Fritz v. Werner, 34 Kan. 576, 580; Zemer v. Antiswell, 75 Cal. 509-512; Watson v. Brooks, 11 Ark. 271; 2 Clark & Sykes on Agency, sec. 778.

*Buder & Buder* and *Eugene Buder* for respondent.

(1) Where the owner sells property to his broker's customer, it is not essential to the broker's right to re-

cover a reasonable commission that the sale be completed within the time or at the price fixed in the broker's contract, if the broker initiates the transaction within the time limited, and the owner subsequently sells the property to such customer. Cole v. Crump, 174 Mo. App. 215; Cole v. Marler, 174 Mo. App. 223; Goffe v. Gibson, 18 Mo. App. 1; Hughes v. Daniel, 187 Ala. 41; Griswold v. Pierce, 86 Ill. App. 406-408; Cleveland Cliff I. Co. v. Gamble, 201 Fed. 329; Williams v. Leslie, 111 Ind. 70; Ewan v. Power, 165 Ky. 806; Jaeger v. Glover, 89 Minn. 490; Cody v. Dempsey, 83 N. Y. S. 899; O'Connor v. Semple, 57 Wis. 243; 9 Corpus Juris, page 608, note 90. (2)   When the broker is the procuring cause of the sale, and the property is sold by the owner at a lower price than authorized in the broker's contract, the owner is liable for the broker's commissions. Burdett v. Parish, 185 Mo. App. 605; Lane v. Cunningham, 171 Mo. App. 17; Weisels-Gerhart R. E. Co. v. Epstein, 157 Mo. App. 101; Hamilton v. Hathaway, 152 Mo. App. 483; Hovey and Brown v. Aaron, 133 Mo. App. 573; Glade v. Eastern Ill. Mining Co., 129 Mo. App. 443; Holland v. Vinson, 124 Mo. App. 417; 9 Corpus Juris, page 601, note 56; Stinde v. Blesch, 42 Mo. App. 578. (3)   Where the agent is the procuring cause of the negotiations which are concluded by the owner, he is entitled to compensation for his services. Bell v. Kaiser, 50 Mo. 150; Tyler v. Parr, 52 Mo. App. 249; Timberman v. Craddock, 70 Mo. 638; Beauchamp v. Higgins, 20 Mo. App. 514; Jones v. Barry, 37 Mo. App. 125; Stinde v. Blesch, 42 Mo. App. 578; Bass v. Jacobs, 63 Mo. App. 393; Lipscomb v. Cole, 81 Mo. App. 53; Crone v. Miss. Valley Trust Co., 85 Mo. App. 601; Cunliff v. Hausman, 97 Mo. App. 467; McCormack v. Henderson, 100 Mo. App. 647; Gelatt v. Ridge, 117 Mo. App. 560; Sallee v. McMurray, 113 Mo. App. 264; Lane v. Cunningham, 171 Mo. App. 17; Perry v. Edelen, 181 Mo. App. 498. (4)   Whether plaintiff was the procuring cause of the sale was properly left to the jury. Lane v. Cunningham, 171 Mo. App. 17; Weisels-Gerhart R. E. Co. v. Epstein, 157 Mo. App. 101; Cole v. Crump, 174 Mo. App. 215, 221; Perry v. Edelen, 181 Mo. App. 498, 507-8.

ALLEN, J.—This is an action to recover the sum of $500 alleged to be due plaintiff as a broker's commission for his services in negotiating a sale of real property belonging to defendant. The suit was begun before a justice of the peace, where defendant prevailed. Upon plaintiff's appeal to the circuit court and a trial *de novo*, before the court and a jury, there was a verdict and judgment for plaintiff, and the case is here on defendant's appeal.

Plaintiff is a real estate broker. Defendant is a corporation controlled by the Jefferson Bank, a banking institution in the city of St. Louis, and is referred to as a "holding company" for the bank. The real estate involved is situated at Sixteenth and Morgan streets in the city of St. Louis, and in 1911, and to the end of March or the beginning of April, 1912, it was owned by one Katzen and one Gram, who owned and operated the "Gram & Glass Cap Company," the bank holding a mortgage or mortgages on the property as security for a loan or loans to the owners thereof. In the summer of 1911, it is said, Katzen authorized plaintiff to negotiate a sale of the property, suggesting to him that he negotiate with one R. E. Funsten who owned adjoining property occupied by the "Funsten Dried Fruit and Nut Company." Plaintiff testified that he made fruitless efforts to sell the property to Funsten—though the latter's testimony is that these dealings were with his son who died prior to the trial below. It appears that both the owners of the property and the officers and directors of the bank realized that it would be necessary for the bank to look to the property to make itself whole; and Gram testified that he told the directors of the bank that he "had a good chance" to sell the property to Funsten for $55,000; though it does not appear that any officer or director of defendant or of the bank knew anything concerning plaintiff's connection with the property during this period. And the evidence is that in October or November, 1911, defendant's president—being also vice-president of the bank—together with the president and second vice-president of the bank, called upon Funsten and sought to make a sale of the

property to him; that they asked $55,000 therefor, but Funsten refused to purchase at that price saying that he "might consider" buying it at $45,000. This "offer" was not accepted. It seems that it was necessary to effectuate a sale at something more than $53,000 in order to prevent a loss to the bank. Matters stood thus, so far as appears, until the latter part of March or the early part of April, 1912, when the said former owners deeded the property to the defendant, the Peer Investment Company, for the bank. Shortly thereafter plaintiff called upon the directors of the bank for the purpose of obtaining authority to negotiate a sale of the property, and as a result of this interview he wrote the following letter:

"St. Louis, Mo., April 9, 1912.
"Jefferson Bank,
    Jefferson and Easton Ave., City.
"Gentlemen:

"Referring to property N. E. corner Jefferson avenue (sic) and Morgan street, I would like to ask the gentlemen of your board of directors again to authorize me to sell said property at a price agreeable to your institution and when such satisfactory price cannot be obtained within ten days, such agreement shall be null and void. For my services I will charge only half of the usual commission, or 1¼ per cent on such price as agreed to by your board of directors.

"Awaiting an early reply, I am,
                "Respectfully yours,
                    "HENRY WESTERMAN."

(It is conceded that this letter refers to the same property.)

In reply plaintiff received the following letter from defendant, viz:

"St. Louis, Mo. April 11, 1912.
"Mr. Henry Westerman,
    1001 Chestnut Street, City.
"Dear Sir:

"We hereby authorize you to sell the property at the N. E. corner of Sixteenth and Morgan streets, for the sum of $53,000 terms to suit, you to receive for your

services after the title changes hands the sum of $500. This agreement will hold good until the 20th day of April, 1912.

"Yours truly,

"PEER INVESTMENT COMPANY,

"Per W. H. HESSE, President."

Defendant's president testified (without objection) that plaintiff stated that he wanted only three days in which to make a sale, but that, at the witness's suggestion, it was agreed to allow him ten days, the "matter" to be "off" and plaintiff to have no claim against defendant unless he should consummate a sale within such time.

Plaintiff did not make a sale of the property. According to his testimony he again called on Funsten and ascertained that the latter would pay $50,000 for the property, but no more, and reported this to the bank's directors. Defendant's evidence, however, tends to show that plaintiff did not report to the bank's directors; and Funsten's testimony is that he declined to deal with plaintiff. In any event the time limited in the contract elapsed without the consummation of a sale by plaintiff, or the production by him of a purchaser at the price named; and a few days thereafter officers and directors of defendant again took the matter up with Funsten, resulting in a sale of the property to him for $50,000. In this connection the bank's president (defendant's vice-president) testified:

"When we called on Funsten after April 20th we told him what the property stood the bank, and offered to sell for $53,000; it stood on our book $53,800; his best offer was $50,000, and we sold it to him. The bank had to sell it, as the State and clearing house people didn't allow the bank to carry it as real estate."

It is earnestly insisted that the trial court erred in refusing to peremptorily direct a verdict for appellant—defendant below, and we regard it as quite clear that appellant is correct in this contention. Plaintiff was not entitled to a commission unless he made a sale of the property within the terms of the special contact entered into between him and defendant—or unless defendant

did something thereafter operating to make itself liable to plaintiff, as by a waiver of its right to insist upon the terms of the contract. There is no suggestion that defendant did anything whereby to obligate itself in any way to plaintiff other than in accordance with the special contract. It is true that plaintiff testified, in a general way, that he continued his efforts until the property was sold. If this be true (and it is contrary to the other evidence touching the matter) there is absolutely nothing to show that defendant's officers and directors even knew of such continued efforts.

Plaintiff can recover only upon showing that he has fulfilled his undertaking evidenced by the terms of the special contract between the parties. Under that contract plaintiff was entitled to no commission unless he brought about a sale, or at least procured a purchaser ready, willing and able to buy the property, at the stipulated price and within the stipulated time. Aside from the matter of time, defendant's agreement to pay plaintiff a commission was made contingent upon a sale at $53,000; but plaintiff was unable to procure a purchaser at that price. There is no pretense that he complied with the terms of his undertaking.

Where a special contract exists, in order to entitle the broker to recover he must show that he has fully complied with the terms and conditions thereof, for otherwise he has not completed his undertaking and has earned no commission. Under such circumstances the owner may, in good faith, insist upon the exact price, or the fulfillment of other terms of the special contract; and if the broker fails to perform, after being accorded full opportunity to do so, the owner may thereafter, as a separate undertaking, negotiate with the broker's customer and sell to him, even on more favorable terms, without incurring liability for commissions. [See Young v. Cooperage Works, 259 Mo. 215, 168 S. W. 611; Jennings & Son v. Overholt, 186 Mo. App. 505, l. c. 511, 512, and authorities there cited, 172 S. W. 449.]

Respondent appears to place considerable reliance upon the opinion of this court in Cole v. Crump, 174 Mo. App. 215, 156 S. W. 769. Under the facts of that case the decision appears to be entirely sound. As stated in the opinion, the contract of employment did not limit plaintiff to a sale within a precise time, though an option was involved which was suffered to expire. Some language employed in the course of the opinion may appear to lend support to respondent's contention, but to the extent that it conflicts with the rule stated above, as being applicable where a special contract exists, it should not be followed. The authorities cited in the opinion in support thereof (l. c. 221) are as follows: Weisels-Gerhart R. E. Co. v. Epstein, 153 Mo. App. 101, 137 S. W. 326; Goffe v. Gibson, 18 Mo. App. 1. In the Weisels-Gerhart case the contract contained no specified time limit, but it was stipulated that the plaintiff's authority might be revoked by the owner on fifteen days' written notice. The plaintiff interested the purchaser in the property and notified the defendant thereof; and the defendant, after negotiating with the purchaser, undertook to revoke the plaintiff's authority in order to avoid the payment of a commission. In Goffe v. Gibson, the contract contained a special clause which is referred to in Young v. Cooperage Works, supra, as distingushing the case from the general rule stated above.

In the instant case defendant had negotiated with the purchaser long prior to the execution of the written contract. Having offered the property to Funsten for $55,000, and received from him a tentative offer of $45,000, defendant's officers and directors doubtless had reason to believe (and one of them so testified without objection) that a sale could be made to this very purchaser for $50,000 several months prior to plaintiff's contract. But defendant was then seeking to obtain a price which would make the bank whole. That defendant, or the bank, ultimately saw fit to sell the property for $50,000, thereby suffering a loss, after giving plaintiff full opportunity to procure a purchaser at the price

named in the contract, does not entitle plaintiff to a commission.

There is no evidence whatsoever that defendant in any wise interfered while plaintiff's contract was in force, preventing a sale in accordance with the stipulated terms, or acted otherwise than in the utmost good faith toward plaintiff. [See Burdett v. Parish, 185 Mo. App. 605, 172 S. W. 620.] Indeed it it clear that plaintiff, without molestation or hindrance, was allowed the full contract time in which to procure a purchaser at the agreed price, and that he wholly failed in his undertaking.

It is unnecessary to discuss other questions raised. The judgment must accordingly be reversed, and it is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.