SABASTIANA GARAFALO vs. NEW YORK, NEW HAVEN, AND
HARTFORD RAILROAD COMPANY.

SALVATORE GARAFALO vs. SAME.

Hampden.   September 27, 1910. — October 19, 1910.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Railroad.*

In an action against a railroad corporation by a girl twelve years of age for personal injuries, there was conflicting evidence on which it could have been found that the plaintiff in lawfully travelling on a highway entered upon a grade crossing of the defendant's railroad, that the gates were up, that the plaintiff's foot was caught between two rails which intersected near the crossing, that, while she was trying in vain to extricate her foot, an engine was standing more than two hundred feet away preparing to back over the crossing, that the gateman put down the gates, thus indicating to the tower man that the crossing was ready for the passage of the engine, and that the tower man communicated this information by signal to the engineer, that the engineer, relying upon the signal, proceeded to back over the crossing and in doing so the engine cut off the foot of the plaintiff, that the tower man would not have given the signal to the engineer if the gateman had not indicated to him that the crossing was clear by lowering the gates, and that, if the gateman had looked at the crossing before lowering the gates, he would have seen the plight of the plaintiff.   *Held,* that there was evidence warranting a finding that there was negligence on the part of the gateman which contributed to the plaintiff's injury.

Two ACTIONS OF TORT against the New York, New Haven, and Hartford Railroad Company, the first by a girl twelve years of age for personal injuries sustained on November 3, 1909, at the Bridge Street grade crossing of the defendant at Middletown in the State of Connecticut, and the second by the father of the plaintiff in the first case for loss of her services and for expenses occasioned by her injuries.   Writs dated November 30, 1909.

In the Superior Court the cases were tried together before *Raymond*, J.   The evidence introduced by the plaintiffs tended to show the following facts: At the time of the accident the plaintiffs lived on Bridge Street in the second house from the crossing.   The accident happened about five minutes to seven o'clock in the evening.   Shortly before the accident the plaintiff Sabastiana, hereinafter called the plaintiff, had left her home with another little girl named Gannon, for the purpose of

going to Main Street to buy candy. The plaintiff was twelve years old and the Gannon girl was eleven. They walked toward Main Street on the sidewalk upon Bridge Street. When they came to the crossing the gates were up. The little girls proceeded over the crossing and were nearly across when the plaintiff's left foot got caught between the last two rails upon the crossing, which came together at a point a short distance south of the crossing. She screamed and tried to pull her foot out with the assistance of the Gannon girl, who unlaced her shoe, but their combined efforts did not succeed in extricating the foot. While the efforts to free the plaintiff's foot were being made, the crossing gates came down, and the little girls saw an engine coming from the vicinity of the Middletown station, the northerly end of which was about five hundred and ten feet south of the south end of the crossing planking. When first seen by the little girls as they were going over the crossing this engine was standing still in the vicinity of the station. When the gates went down and the engine started to move toward her the plaintiff screamed as loud as she could and told the Gannon girl to tell the man in the gate house to help her. The Gannon girl ran over to the tower or the gate house and told the gateman to stop the engine because a girl had her foot caught. The gateman " hollered out " the window of the tower or the gatehouse to the man in the engine, which was by this time in front of the gate house, but the engine proceeded over the crossing. The plaintiff, as the engine approached, threw her body away from the track, and the engine and tender passed over her leg, severing her foot from her body.

The character of the evidence and the findings warranted by it are described in the opinion.

At the close of the evidence the defendant asked for thirteen rulings in each of the cases. Of these the judge gave as instructions to the jury in each of the cases the fourth, fifth, ninth and thirteenth rulings requested. The other rulings asked for by the defendant were as follows:

" 1. Upon all the evidence in the case the plaintiff is not entitled to recover.

" 2. There is no sufficient evidence in the case that the plaintiff was in the exercise of due care.

" 3. There is no sufficient evidence in the case that the defendant was negligent."

" 6. Upon the evidence in the case, even if the gates were up at the time the plaintiff entered upon the crossing, that fact did not contribute to the accident and the plaintiff cannot recover by reason of the alleged failure to lower the gates.

" 7. Upon the evidence in the case, even if the gates were lowered after the plaintiff had entered upon the crossing, that fact did not contribute to the accident, and the plaintiff cannot recover by reason thereof.

" 8. There is no sufficient evidence in the case that the defendant by its servants or agents knew, or could reasonably have known, that the plaintiff's foot was caught upon the crossing or that she was unable to escape therefrom, and there was therefore no negligence in omitting to signal or warn the persons upon the engine of the presence of the plaintiff upon the crossing."

" 10. Upon all the evidence in the case the engineer did not know and could not in the exercise of reasonable care know of the plaintiff's presence upon the track, and the defendant is not liable for failing to stop the engine before the accident.

" 11. There is no evidence in the case that the engineer knew that the plaintiff's foot was caught upon the crossing and that she was unable to escape therefrom, and in the absence of such knowledge, even if the engineer saw the plaintiff, he had a right to assume that she would leave the track as the engine approached her, and he was, therefore, not negligent in failing to stop the engine before the accident.

" 12. There is no evidence in the case that the gateman Clinch knew in season to stop the engine that the plaintiff's foot was caught upon the crossing and that she was unable to escape therefrom, and in the absence of such knowledge he had a right, if he saw her upon the crossing, to assume that she would leave it as the engine approached, and he was, therefore, not negligent in failing to stop the engine before the accident."

The judge refused to make any of the rulings quoted above, and submitted the cases to the jury with certain special questions. These questions and the answers of the jury in each of the cases were as follows:

" Was the gateman Clinch negligent ?"    Ans.  " Yes."

"If so, did his negligence contribute to the plaintiff's injury?" Ans. "Yes."

"Was the engineer McKay negligent?" Ans. "Yes."

"If so, did his negligence contribute to the plaintiff's injury?" Ans. "Yes."

The jury returned a verdict for the plaintiff in the first case in the sum of $13,958.33, with a certain amount for interest which afterwards was remitted, and returned a verdict for the plaintiff in the second case in the sum of $2,661.67, with a certain amount for interest which afterwards was remitted. The defendant alleged exceptions.

*W. S. Robinson*, (*H. P. Small* with him,) for the defendant.

*W. H. McClintock*, (*J. B. Carroll* with him,) for the plaintiffs.

HAMMOND, J. Inasmuch as the questions raised are substantially the same in both of these cases, we shall discuss only the case brought in behalf of the child; and the term "plaintiff" will be used to designate her alone.

There was ample evidence of the due care of the plaintiff. The evidence as to whether the gates were up at the time she entered upon the crossing was conflicting, but the jury may well have found that they were up; and further, that neither in entering upon the crossing while the gates were in that position, nor in anything she did in her attempt to cross, either before or after her foot was caught, was she negligent.

The jury were instructed that there was no evidence of negligence of the defendant except possibly in two respects, namely, in the conduct of the engineer, or in that of the gateman; and the question whether there was any negligence on the part of these servants or either of them was submitted to the jury, who, in addition to the general verdict for the plaintiff, found specially that each one of these servants was negligent and that the negligence of each contributed to the plaintiff's injury.

The defendant strenuously contends that these special findings are not warranted by the evidence and has made a strong argument in support of that contention. It must be conceded that as to each of these servants, particularly the engineer, the question of negligence is somewhat close; and the defendant may reasonably have anticipated a different conclusion on the part of the jury. We have carefully read over the evidence. As is

usual in cases of this kind, it is conflicting, but we think that the jury properly may have found that the gates were up at the time the plaintiff entered upon the crossing, and remained up until her foot was caught; that while her foot was thus fastened, and while the engine was standing more than two hundred feet southerly of the crossing and about to back up over it, the gateman put down the gates, thus indicating to the tower man that the crossing was ready for the passage of the engine, which information was communicated by signal to the engineer; that the engineer, relying upon the signal, proceeded to back over the crossing and in so doing ran over the foot of the plaintiff, inflicting upon her the injury complained of; that the gates were put down, and that the signal would not have been given by the tower man to the engineer to cross but for the lowering of the gates. In a word, that by lowering the gates the gateman gave the initial move which resulted in the starting of the engine and its passage over the crossing. They might have found further that before lowering the gates the gateman could have seen the plight in which the plaintiff then was and that the accident was due to his failure to look. Upon such findings the jury properly might have concluded that there was negligence upon the part of the gateman and that it contributed to the plaintiff's injury.

The plaintiff contended and the jury have found that the engineer also was negligent. We are of opinion that the evidence sustains this finding; but in view of the specific findings as to the gateman it becomes unnecessary to go at length into the evidence as to the engineer. The plaintiff's case well rests upon the findings as to the gateman, irrespective of the conduct of the engineer.

It follows that the first three rulings requested could not have been given. The fourth and fifth, ninth and thirteenth, were given. The sixth was properly refused. Upon the evidence it was a question for the jury whether the plaintiff would have attempted to cross if the gates had not been up, or in other words whether she was not lulled into security by the position of the gates. The seventh was properly refused. There was evidence that the lowering of the gates while the plaintiff's foot was caught set in play the train of causes which led directly to the

approach of the engine.    The eighth could not have been given. Omitting other obvious objections to this request it is sufficient to say that it was a question for the jury whether the gateman or engineer presumably could have known of the plight of the plaintiff or that she was unable to escape from the track. The tenth and eleventh were properly refused.    The questions whether the engineer in the exercise of due care could have known of the plaintiff's presence upon the crossing, or that she was unable to escape therefrom, were for the jury.    From what has been said it is apparent that the twelfth could not have been given.

The defendant has criticised that part of the charge in which the judge defines the standard of care required of the defendant. It may be doubted whether, taking the charge as a whole, there is any ground for the criticism, but, whether that be so or not, the defendant took no exception to the charge and cannot raise now for the first time the question of its accuracy in this respect.

*Exceptions in each case overruled.*