AGNES HUNT & another *vs.* BOSTON AND MAINE RAILROAD.

Berkshire.    September 16, 1924. — January 8, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence*, Trespasser, Railroad.    *Evidence*, Relevancy and materiality, Opinion.    *Practice, Civil*, Exceptions.

The principle of law, that a railroad corporation is under no duty toward either a voluntary or an involuntary trespasser upon its right of way except to refrain from wilful or wanton misconduct toward him, cannot be extended to relieve the corporation from its obligation to use due care in the operation of its engines and trains so as not to injure property and parts of property which are rightfully on the public highway where the defendant's railroad crosses the highway at grade, even though as to a part of such property its general obligation of due care does not attach by reason of the involuntary situation of that part off the public highway and on the defendant's right of way.

At the trial of an action against a railroad corporation for damages to an automobile run into after dark on a grade crossing of the railroad with a highway, there was evidence tending to show that a train of the defendant had approached the crossing over a stretch of track from which the crossing was visible to the engineer for about three thousand feet; that when the automobile came upon the track there was no train in sight; that the automobile stalled there; that, when the train approached, a flagman of the defendant gave a lantern signal which the engineer saw and to which he responded when he was about eight hundred feet from the crossing; that no brakes were applied to the engine until after it struck the automobile and passed the crossing.    *Held*, that a finding that the engineer was negligent was warranted.

Upon exceptions by the plaintiff at the trial of the action above described, where, by order of the trial judge, a verdict was ordered for the defendant, it was *held*, that

    (1)  Evidence of a statement by the flagman that he "was new on the job" was properly excluded;

    (2)  The plaintiff was not injured by the exclusion of the opinion of a witness as to how long it would have taken to start the motor and drive the automobile off the crossing;

(3) No injury was sustained by the plaintiff in the exclusion of a question as to whether the driver of the automobile, if he had tried, would have had any difficulty in starting the car and getting it out of a place of danger in time to avoid the collision, since the question sought an opinion on facts which properly were for the jury to determine, and it also appeared that the driver later was permitted to answer, in substance, that, if permitted, he would have had time to drive the car away before the train arrived at the crossing.

TORT for damages to an automobile owned by the plaintiffs.    Writ dated March 21, 1921.

In the Superior Court, the action was tried before *Burns,* J.    Material evidence is described in the opinion.    Such features of a plan, introduced in evidence, as were material to the evidence described in the opinion appear below.

At the close of the evidence for the plaintiffs, the trial judge ordered a verdict for the defendant.    The plaintiffs alleged exceptions.

The case was argued at the bar in September, 1924, before *Rugg,* C.J., *Braley, Crosby, Pierce, & Wait,* JJ., and afterwards was submitted on briefs to all the Justices.

*M. E. Couch,* for the plaintiffs.

*A.. W. Rockwood,* for the defendant.

PIERCE, J. This is an action of tort to recover damages to a registered automobile, owned by the plaintiffs, which, they allege, were caused by the negligent driving of an engine and freight train by the servants of the defendant against the automobile while it was stalled on the tracks of the defendant's railroad; which tracks were within the location of the railroad and crossed a public highway at grade. On a motion of the defendant at the close of the evidence for the plaintiffs, the presiding judge directed a verdict for the defendant, and the case is here upon the plaintiffs' exceptions thereto.

In its aspect most favorable to the contention of the plaintiffs, the testimony disclosed by the record would have warranted the jury in finding the following facts: On December 13, 1920, after dark, at about 5:30 in the afternoon, a daughter of one of the owners of the automobile, having an operator's license, with the permission of the owners, in the course of an intended excursion from North Adams to Williamstown drove the automobile onto River Street where it leads to the south, at grade, over the tracks of the defendant's railroad to a small wooden bridge over the Hoosac River which is a part of a public highway. This public highway crossing was planked thirty feet wide on the north side and twenty feet wide on the south side where the way over the crossing connected with the highway leading over the bridge which was distant about sixteen feet south of the southerly rail of the railroad. The bridge had a planking of fifteen feet serviceable for travel. The west side of the planking of the crossing was not in line with the west side of the planking of the bridge; and, projected, would come about five feet east of the west side of the travelled part of the highway bridge. At the crossing the tracks ran approximately east and west and River Street approximately north and south. There were three tracks: the most northerly a siding or spur track leading into a place of business; the middle one was the west bound main track; and the third was the east bound main track. To the east of the crossing the tracks were straight for a distance of three thousand nine hundred and forty feet " with somewhat of a

down grade." The railroad station is about seven hundred and fifty feet to the east of the crossing. At the northwest corner of the bridge, on the southerly side of the crossing, was the crossing tender's shanty; a flagman or crossing watchman being maintained at the crossing by the defendant.

The automobile was a five-passenger Paige touring car; the top was up but the curtains were not on the sides. The driver sat on the left-hand side with a companion on the right-hand side. The automobile was a self-starter and had chains on its rear wheels. It had snowed early in the afternoon and the roadway was wet. As the automobile approached the crossing on the north side going south its headlights were lighted and it was going eight or ten miles an hour. The driver looked to see if the flagman was there as she drove up a little grade to the crossing; he was not there; the bell was not ringing; she looked up the track toward North Adams and down the track toward Williamstown and the bridge straight away one thousand three hundred and fifty feet distant. There was no train in sight. In consequence of not seeing the flagman she shifted into second gear before coming to the crossing. She saw that the dirt had worn away from the planking and that the rail was four or five inches above it. In consequence she drove cautiously upon the crossing. Just as she was going over the north track (the first track) the rear wheel of the automobile struck the rail with a jar. When the chain hit the rail " it caused the car to skid and it began to spin." It skidded to the right and the driver turned the wheel to the right, with slight pressure on the brake to stop the skidding but so hard that it stalled the engine.

When the engine stalled the front wheel had run off the crossing. The right front wheel was just off the planking, up against the south rail of the east bound or southerly track. The right front tire rested on the ground within an inch or two of the end of the planking, three or four inches below the top of the planking and against the south rail of the east bound track. The rear of the automobile was ten or twelve inches over the west bound track; the body of the auto-

mobile was on the crossing of the east bound track, with the exception of the front right wheel which was on the ground about two inches to the west of the planking.

When the automobile stalled no train was in sight. When the automobile finally stopped the train was in sight at the bend three thousand nine hundred and forty feet distant to the east. After the car stalled the flagman came out of his cabin to the driver, who had her heel on the starter to start the car; he told her to get out, which she did protesting she could start the car. The flagman stood on the south side of the west bound track and waved a red bull's-eye lantern back and forth. Upon the somewhat inconclusive testimony of the plaintiff the jury would have been warranted in finding that the engineer of the train, in response to the signal of the flagman's lantern, answered that signal with two blasts of the whistle at the switch light just beyond the station and seven hundred and fifty or eight hundred feet east of the crossing, as he was required to do by the rules of the defendant. The train, five to seven seconds later, struck the automobile, causing the damage complained of, and stopped four or five car-lengths over the crossing. The station was a way station where express trains did not stop and where some local trains stopped on flag and some didn't.

The defendant's first contention in support of the directed verdict is that the automobile was a trespasser and that consequently the defendant owed the plaintiffs no duty in the absence of wanton or wilful injury. It is conceded that the principle of law invoked is applicable to involuntary as well as to voluntary trespassers. *Pennington* v. *Director General of Railroads*, 97 N. J. L. 40. But that principle cannot be extended rightly to release the defendant from its obligation to use due care in the operation of its engines and trains so as not to injure persons, property and parts of property which are rightfully on the public highway where the defendant railroad crosses the highway at grade, even though as to a part of such property the general obligation of due care does not attach by reason of the involuntary situation of that part.

The defendant further contends that there was no evidence

of its negligence.  The jury would be warranted in finding, directly or upon proper inference, that the flagman gave the usual red-stop signal of the lantern, required by the rules of the defendant to be used when necessary to stop trains; that the engineer responded to that signal with two blasts of the whistle in the manner required by the rules of the defendant; and that the signal was received and answered when the engine was about eight hundred feet from the crossing.  There was further evidence that warranted a finding that the gateman came from his cabin with his lantern when the train was distant thirty-nine hundred feet east of the crossing; that the track was straight, and the engineer could have and should have then seen the signal; that after the engineer answered the signal with two blasts of the whistle, the train came right along without application of the brakes until it stopped about seven seconds later four or five car-lengths over the crossing.  On either hypothesis of fact the jury could reasonably find that the engineer saw the signal at a time when he might have stopped the train, or that he failed to see it when he should have seen it if he had been in the exercise of due care.   Seeing the signal at either point the jury could determine that it was reasonably practicable for the engineer to stop the train before it came upon the crossing; that he did not stop it; that it was negligence not to stop it; and that the harm to the automobile resulted as a direct consequence of such failure of the train to stop.  *Commonwealth* v. *Peckham,* 2 Gray, 514, 515. *Fallon* v. *Boston Elevated Railway,* 201 Mass. 179.  *Lawrence* v. *Fitchburg & Leominster Street Railway,* 201 Mass. 489. *Garafalo* v. *New York, New Haven & Hartford Railroad,* 206 Mass. 539.  *Clapp* v. *New York, New Haven & Hartford Railroad,* 229 Mass. 532.

We think it sufficiently plain, without discussion, that there was evidence of the due care of the driver of the automobile. We think the evidence of a statement by the flagman that he " was new on the job " was properly excluded.  *Lang* v. *Boston Elevated Railway,* 211 Mass. 492.  *Polmatier* v. *Newbury,* 231 Mass. 307.  We also think the plaintiffs were not injured by the exclusion of the opinion of a witness as

to how long it would have taken to start the motor and drive the automobile off the crossing. We further think that no legal injury was sustained by the plaintiffs in excluding the question as to whether the driver would have had any difficulty in starting the car and getting it out of a place of danger in time to have avoided the collision. The question was or involved a consideration of facts which were properly for the jury. Moreover, the driver was later permitted to answer, in substance, that if permitted she had time to drive the car away before the train should arrive at the crossing.

In the opinion of a majority of the court the exceptions should be sustained.

*Exceptions sustained.*