### MARTIN v. FEGAN.

(Supreme Court, Appellate Division, Second Department. June 3, 1904.)

1. BROKERS—ACTION FOR COMMISSIONS—FINDINGS—EVIDENCE.
    In an action for broker's commissions, evidence *held* to warrant a finding that plaintiff was the procuring cause of the sale.

2. SAME—FRAUD.
    Where, in an action for broker's commissions, the trial court found that defendant agreed with the purchaser found by plaintiff on a sale of the property, that it was the purchaser's money that paid for it, and that the reason for taking the title in the name of another was to keep plaintiff in ignorance of the sale of the property having been made to his customer, defendant was not entitled to a dismissal of the complaint at the close of plaintiff's case, on the ground that the proof sustained an action for fraud, and did not prove the cause of action alleged.

3. SAME—PERFORMANCE OF CONTRACT.
    Where a broker was instructed "to get an offer" for defendant's property, which he did, and defendant finally sold the property to the pur-

---

¶ 3. See Brokers, vol. 8, Cent. Dig. §§ 66, 69, 73, 74.

chaser procured by the broker, the latter was not precluded from recovering commissions by reason of the fact that the price for which the property was sold was less than the price at which plaintiff was instructed to sell.

Appeal from Municipal Court of New York.

Action by Robert F. Martin against Edward R. Fegan. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

R. McKinlay Power, for appellant.
T. C. McKennee, for respondent.

HOOKER, J. The defendant appeals from a judgment of the Municipal Court rendered in the plaintiff's favor in an action to recover commissions as a real estate broker for the sale of defendant's property. Aside from admitting the residence of the plaintiff and the plaintiff's demand upon him for the commissions, no part of which has been paid, the defendant interposed a general denial to the complaint. Several letters are in evidence, without objection, in which the defendant, during a period of several months before he actually sold this property, requested the plaintiff to sell his house and lot for him. In one of them he states that $4,100 is his bottom price, while in another he says that he wants him to sell or rent his property, and wishes it to be done "quick, so I can hook onto something else." Elsewhere it appears that the defendant requested the plaintiff to sell his property, or, in any event, to get an offer for him. Prior to a certain Sunday in the middle of May, 1903, the plaintiff had been able to consummate a sale. On that day he was called upon by a customer of his (M. H. Blake), and, after looking at one or two other pieces of property, plaintiff took Mr. Blake and his wife to the defendant's property, and introduced them there to the defendant and his wife. Blake was shown all over the property, and seemed pleased with it, and wanted to know what the defendant's bottom price was. He was told $4,200, and, after leaving, returned shortly, and wanted to know if the property could not be had for less. The defendant then told him he would sell it for $4,100 cash, and that he could not let it go at a lesser figure. The facts so far are not in dispute. The testimony as to subsequent transactions, however, is in violent conflict. The plaintiff relies upon the evidence of Blake, whose wife subsequently took title to this property. This witness states that a few days after the Sunday in question, in response to a letter from the defendant, he called at defendant's place of business, and there agreed with him to purchase the property for the sum of $3,900, and then and there paid $20 "deposit," for which he obtained a receipt from the defendant. He says that after this receipt was delivered the defendant showed him a telegram from some other person offering him $4,000 for the property, and told him that this third party would feel aggrieved if he learned the property had been sold to Blake for $3,900, and suggested to Blake that, if he could do so,

and felt disposed, he would like to have the title pass to some friend of Blake's, who later might deed to him. Blake says he told the defendant that he was willing to oblige him in the matter, and had a friend in whom he could repose confidence, and whom he would bring around later. On the following day he called on the defendant again in company with Mr. Ivanie, Blake's friend and· "partner," the defendant's immediate record grantee. The purpose of this call was to obtain a contract for the sale of the property and to pay something on account of the purchase. Blake says he produced a $500 bill for this purpose, and was about to hand it to the defendant, when the latter directed him to give it to Ivanie, and allow the latter to make the payment. This was done, and the contract prepared between the defendant and Ivanie. Later, and on the 25th day of May, 1903, the defendant deeded to Ivanie. On July 25, 1903, Ivanie deeded to Blake's wife. The defendant, however, in his evidence, denied that Ivanie was brought into the transaction at his suggestion, and says that Blake agreed to meet him at plaintiff's office on Monday immediately following the Sunday on which Blake and his wife viewed the premises, but that Blake did not appear, and, receiving his address from the plaintiff, he wrote to him; that a day or two later Blake came in, and offered $3,500, which was refused; that he left, and came back later, and raised the price to $3,700, and then later in the day offered $3,800, and, finally, at still another interview, offered $3,900, which defendant said he absolutely refused, and Blake left. The defendant testified that the day following the last interview had with Mr. Blake, Mr. Ivanie called upon him, said he had seen the cottage, and would give $3,900 for it; that he asked Ivanie whether he was acquainted with Mr. Martin, or any other real estate men who had the property for sale, and the latter replied that he was not; that he then agreed with him at the figure of $3,900, paying a deposit of $500; and that he gave a contract, and later a deed. He said that Blake was not present with Ivanie, and he had no knowledge that Blake and Ivanie were acquaintances or friends. This evidence clearly presented a question of fact for the trial justice to determine, and with his finding in plaintiff's favor we are not at all disposed to interfere.

The defendant complains of the judgment also upon the ground that his motion to dismiss the complaint at the conclusion of plaintiff's case should have been granted for the reason that the plaintiff's proof substantiated an action of fraud, and did not prove the cause of action set forth in the complaint, the mere allegation of broker's commission earned and unpaid. This claim has no merit. The trial court was justified in finding, and has found, that the defendant agreed with Blake upon the sale of this property, that it was Blake's money that paid for it, and that the reason for the taking of the title in Ivanie was to throw the plaintiff off the scent, and keep him in ignorance of a sale of the property having been made to a person introduced by the plaintiff, who was willing, ready, and able to buy at defendant's price and upon his terms. That the defendant may have adopted dishonorable means to prevent the plaintiff from acquiring knowledge of facts which gave him a cause of action against the de-

fendant, does not abridge the plaintiff's right of action upon contract for broker's commissions.

The defendant also objects to the judgment upon the ground that, inasmuch as the plaintiff had been instructed to sell the property for not less than $4,100, he is not entitled to a commission on the price at which it was actually sold, namely, $3,900. It appears in the evidence, however, that the plaintiff was instructed to get an offer for the place, and this the defendant admits. In view of the instruction of the defendant to the plaintiff to get an offer, the implied contract was that the defendant would pay the commissions upon the sale price in event of the defendant's agreeing upon a figure with some person introduced by the plaintiff, and selling to him.

The judgment appealed from should be affirmed, with costs. All concur.