GORDON A. JOHNSTONE *vs.* JOHN COCHRANE & others.

Middlesex.    November 11, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Exceptions, Parties. *Agency,* Commissions. *Broker.*

In an action where a verdict had been ordered for the defendants and the plaintiff had alleged exceptions, it appeared by the record that certain evidence of the plaintiff had been admitted by the judge subject to the defendants' exceptions, and it was contended by the defendants before this court, that the evidence thus admitted was incompetent and should not be considered by this court in determining the case upon the plaintiff's evidence, but it was *held* that it was not necessary to pass upon this question or upon the competency of the evidence thus admitted, because the jury were warranted in finding for the plaintiff against one of the joint defendants without considering the evidence in question.

In an action for a commission for procuring the sale of the property of a manufacturing corporation, of which the defendants were the controlling stockholders, where it appears that the plaintiff procured a purchaser who bought the property in question for $250,000, of which $160,000 was paid in cash and the remaining $90,000 in preferred stock of a new corporation, testimony of the plaintiff on his cross-examination, that, "The plaintiff always held it and offered it at $250,000 and understood it was to be $250,000 cash, 'the best we could get for it;'" does not show that the plaintiff's authority was limited to a sale for $250,000 in cash and the last clause of the sentence contradicts that contention.

In the action above described, after contradictory evidence in regard to the negotiations, the principal defendant testified that, "From that time on he [the plaintiff] had the negotiations for the sale of the plant personally with Mr. S [the representative of the purchaser] and the interests that he represented who finally purchased." *Held,* that the jury were warranted in finding that this statement of the defendant was true and entitled the plaintiff to go to the jury.

In the same case it also was *held* that the fact, that the property for which the plaintiff procured a purchaser belonged to a corporation, of which all the stock was owned by the principal defendant, his sister and his father, did not necessarily make the employment of the plaintiff to procure a sale of the property an employment by the corporation, there being evidence that the principal defendant personally employed the plaintiff to find a purchaser for the property.

The well established principle here was followed, that a broker earns a commission when he brings the property which he is employed to sell to the attention of a third person and then turns that person over to his employer and the property is sold to such third person as the result of the negotiations begun with him by the broker.

In the case above described the second defendant was the sister of the principal defendant and was one of the three holders of all the stock of the corporation, but there was no evidence that she employed the plaintiff or that the principal defendant was authorized to employ him in her behalf, and it was *held* that a verdict should be ordered in her favor, the fact that she derived benefit from her brother's employment of the plaintiff being no evidence of her liability.

The action above described, after the death of a third defendant, was prosecuted against the principal defendant and his sister jointly, and the evidence showed a right of action against the principal defendant alone. The principal defendant contended that no recovery could be had against him severally; but it was *held* that by R. L. c. 177, § 6, such recovery against one of two or more defendants in an action of contract is authorized "although it is found that all the defendants are not jointly liable."

CONTRACT against John Cochrane, Pauline Cochrane and J. Eugene Cochrane for $11,867.41 upon an account annexed as follows:

"July 1, 1912, to commission at five per cent on sale price of $250,000 of real and personal property of the Danielsonville Cotton Company at Killingly, Connecticut          $12,500.00

"Credit by money advanced to cover expenses of travelling, advertising, etc.          632.59

$11,867.41"

Writ dated January 14, 1916.

Later a suggestion was filed stating the death of the defendant John Cochrane on February 13, 1916, and on March 16, 1917, by agreement of counsel in open court the plaintiff discontinued his action against the defendant John Cochrane without costs.

In the Superior Court the case was tried against the other two defendants before *J. F. Brown*, J. The plaintiff's evidence is described in the opinion. At the close of the plaintiff's evidence the judge, upon motion of each of the defendants, made the following rulings:

"1. That the plaintiff has not made out a case against this defendant.

"2. That upon all the evidence submitted by the plaintiff the jury would not be warranted in finding a verdict against the defendant.

"3. That it appears, upon the plaintiff's own testimony, that whatever the defendant did in the way of sale of the corporation property was done in behalf either of the Danielsonville Cotton Company or the Cochrane Manufacturing Company, and not in his individual capacity.

"4. That the plaintiff has submitted no evidence whatever which would warrant a finding against this defendant.

"5. That there is no evidence that in anything that J. Eugene Cochrane did he was acting as agent for his intestate.

"6. That upon the evidence the sale on which the plaintiff claims a commission was on materially different terms from those on which plaintiff claims he was authorized to arrange for sale."

The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

At the trial certain evidence of the plaintiff was admitted by the judge subject to the defendants' exception, and it was contended by the defendants in this court that this evidence was incompetent and should not be considered by this court in determining the case on the plaintiff's evidence, although the defendants, a verdict having been ordered in their favor, filed no bill of exceptions.

R. L. c. 177, § 6, is as follows: "In an action against two or more defendants upon a contract express or implied, the plaintiff shall be entitled to judgment against such defendants as are defaulted and against those who upon trial are found liable, although it is found that all the defendants are not jointly liable."

*G. C. Richards,* (*A. R. Pike* with him,) for the plaintiff.

*F. G. Katzmann,* (*J. P. Vahey & J. R. McCoole* with him,) for the defendants.

LORING, J. This is an action to recover a commission for the sale of the property (with an exception which need not be stated) of the Danielsonville Cotton Company. The defendants were John, Pauline and J. Eugene Cochrane. It appeared at the trial that John died after this action was brought. On the evidence introduced at the trial the presiding judge directed the jury to return a verdict for the other two defendants and the case is here on an exception to that ruling and upon an exception to the admission of certain evidence introduced against the objection of the defendants.

We do not find it necessary to pass upon the question of evidence, for we are of opinion that, laying that evidence on one side, the jury were warranted in finding for the plaintiff as against the defendant Eugene. At another trial it is not likely that the evidence admitted under the defendants' exception will be presented in the same form.

There was a great deal of confusion in the evidence on many of the details of the transaction here in question. We do not find it necessary to go into or state these details at length. The jury were warranted in finding the following to be the facts of the case: The plaintiff was the agent in charge of the Danielson-ville Cotton Company situate at Danielson in Connecticut. The original defendants were the owners of all. the corporate stock of that company. In April, 1911, the defendant Eugene asked the plaintiff to find a purchaser for the property and agreed to pay him the usual broker's commission if he was successful in so doing. A year later the plaintiff brought the property to the attention of Frank Bulkeley Smith. Smith came to Danielson and made a thorough inspection of it. At the conclusion of his inspection he asked the plaintiff to put him in communication with his (the plaintiff's) principal. Thereupon the plaintiff arranged for a meeting between Smith and Eugene. This meeting took place at the Worcester Club on the evening of the day on which the request was made, namely, April 2, 1912. Negotiations for the sale of the property were begun between Eugene and Smith at that meeting. Later on Smith introduced Eugene to his principals Kidder, Peabody and Company, and the negotiations begun between Eugene and Smith were carried on between Eugene, Smith and Kidder, Peabody and Company until the latter part of May or the early part of June when Kidder, Peabody and Company agreed to buy the property for $250,000, $160,000 to be paid in cash and $90,000 to be paid in the second preferred stock of the Danielson Cotton Company of Massachusetts, a corporation organized by Kidder, Peabody and Company to take title to and operate the mill. The conveyance to the new corporation was made on June 26, 1912. The $160,000 in cash was paid to the old corporation by Kidder, Peabody and Company, and the old corporation paid it to Marshall Field and Company in payment of its debt to that firm;

the $90,000 second preferred stock was distributed to and among Pauline, Eugene and the personal representatives of John Cochrane as the owners of the stock of the old corporation.

The defendants' first contention is that by the terms of the plaintiff's employment by Eugene the plaintiff was to be paid a commission only if he procured a sale for $250,000 in cash, and the sale which was made was for $160,000 in cash and $90,000 in the second preferred stock. There is nothing in the evidence which even gives color to this contention. The evidence showed that Eugene employed the plaintiff to find a purchaser for the property and agreed at the time to pay him the usual commission. At that time he told the plaintiff that he intended to ask $300,000 for the property and the plaintiff told him that that price would be prohibitive. Thereupon Eugene asked the plaintiff what he thought the property could be sold for and the plaintiff told him "Possibly $250,000 would be the maximum that could be got for the property." Later on, while the negotiations with Smith were going forward, Eugene suggested to the plaintiff that the price should be changed to $200,000 and the plaintiff then told Eugene that if the property could be sold for $200,000 it could be sold for $250,000. The defendants' main contention in this regard is founded upon an answer of the plaintiff made during his cross-examination. But in quoting the answer the defendants' counsel has omitted the last seven words. The record states that on cross-examination the plaintiff testified: "The plaintiff always held it and offered it at $250,000 and understood it was to be $250,000 cash, 'the best we could get for it.'" Even without the last seven words there is nothing in this testimony which supports the defendants' contention and the last seven words negative it.

The defendants' second contention is founded upon a statement made by Eugene in his direct examination. In his direct examination Eugene testified that he "saw Mr. Winsor [of Kidder, Peabody and Company] at his house about six weeks after the Union Club conference. There had been a complete break in the negotiations; they started all over again. He saw Mr. Smith again at Kidder Peabody's about the first of June." The "Union Club conference" was a meeting between Smith and Eugene at the Union Club in Boston about two weeks after the

first meeting at the Worcester Club on the evening of April 2. In the first place the jury were not bound to believe this testimony. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314. In the second place it was directly contradicted by Eugene himself in another part of his testimony. After stating that he met Smith at the Worcester Club on April 2, 1912, Eugene testified that: "From that time on he had the negotiations for the sale of the plant personally with Mr. Smith and the interests that he represented who finally purchased." Apart from this testimony of Eugene it is apparent from the details of Smith's visits to the plant and the conferences that took place which are set forth in detail in the testimony but which we have not found it necessary to refer to at length, that the jury were warranted in finding that the last statement of Eugene set forth above was the fact. Under these circumstances it is not necessary to consider what the result would have been as matter of law had it been the fact that there had been "a complete break in the negotiations."

The defendants' next contention is that, if there was any contract with the plaintiff, it was a corporate one made between the plaintiff and the old corporation the Danielsonville Cotton Company. The fact that the property to be sold was owned by the corporation and not by Eugene does not of necessity make the employment of the plaintiff to procure a sale of the property an employment by the corporation. A person who does not own property may, if he chooses, employ a broker to get a purchaser for it. The fact that he does not own the property is a circumstance bearing upon the question whether he did in fact employ the broker to find a purchaser for the property. But this is the only bearing which that fact has. The matter was discussed at length in *Monk* v. *Parker,* 180 Mass. 246, and what was said there need not be repeated here. It appeared in the evidence at the trial that the former corporation (the capital stock of which was owned by Eugene, his sister and his father) had become indebted in a large amount to Marshall Field and Company, and that the occasion of Eugene employing the plaintiff to find a purchaser for the property was because Marshall Field and Company were pressing for the payment of this debt. In the end the whole of the $160,000 paid in cash by Kidder, Pea-

body and Company, had to be and was applied by the old corporation in the payment of this debt to Marshall Field and Company. Under these circumstances there was nothing significant much less conclusive in the fact that the property for which Eugene asked the plaintiff to find a purchaser was owned by the corporation and not by him. The defendants have urged in this connection that the paper on which Eugene wrote to the plaintiff when he did write him, was corporate paper. It was corporate paper. But it was not the corporate paper of the Danielsonville Cotton Company. It was the corporate paper of the Cochrane Manufacturing Company, another corporation which it appeared in evidence was owned by the same persons who owned the Danielsonville Cotton Company. And it is the fact that every letter written to the plaintiff was signed by Eugene personally and never as an officer of either corporation.

The last fact relied upon by the defendants in this action is that on cross-examination the plaintiff was asked this question, "You were instructed by Mr. Cochrane, in his capacity of treasurer and manager of this Danielsonville Cotton Company, to show the plant to anybody who came down there to see it, after you first learned from any source that they were going to run the plant's stock out, close it up and sell it?" and that the plaintiff answered, "No I didn't have such instructions. I had instructions to show Mr. Nicholson, and he was to send his customers with a card of identification so as to know it was his customer and not a customer of some other broker." The defendants' contention based upon this question and answer is that, "the failure of the plaintiff as indicated above to repudiate the notion that he was dealing with Mr. J. Eugene Cochrane in his official capacity shows pretty strongly that what we are contending for is true." There is nothing in this suggestion.

It is settled by many decisions (and among them *Desmond* v. *Stebbins*, 140 Mass. 339, and *Willard* v. *Wright*, 203 Mass. 406) that a broker earns a commission where he brings the property which he is employed to sell to the attention of a third person and then turns that person over to his employer and the property is sold as the result of negotiations so begun between the two.

We are of opinion that the plaintiff made out a case against the defendant J. Eugene Cochrane.

We are however of opinion that the plaintiff did not make out a case against the defendant Pauline Cochrane, the other defendant left after the action had abated as against John Cochrane by his death. There was no evidence that Pauline authorized Eugene to employ the plaintiff as a broker in her behalf. Nor was there any evidence that Eugene undertook to employ him in behalf of Pauline. The fact that she derived benefit under Eugene's employment of the plaintiff does not make her liable. So far as the defendant Pauline is concerned the ruling directing a verdict for the defendants was right.

The defendant Eugene Cochrane has insisted that the ruling directing a verdict for him was right, even if he would have been liable had he been the sole defendant. This contention is based on the ground that the action here in question was brought against Pauline and him jointly and the case made out in the evidence was a case against him alone. He relies in this contention upon *Tuttle* v. *Cooper*, 10 Pick. 281. But soon after the decision of this court in that case "the Legislature passed a statute, which, with occasional modifications, has since continued in force, authorizing the plaintiff in an action of contract against two or more defendants, to take judgment against those, though less than all sued, who should appear upon the trial to be liable." That statute is now R. L. c. 177, § 6. The cases of *Leonard* v. *Robbins*, 13 Allen, 217, *Monk* v. *Parker*, 180 Mass. 246, are cases where this statute was applied.

The result is that the exceptions to the ruling must be overruled so far as the defendant Pauline Cochrane is concerned and sustained so far as the defendant J. Eugene Cochrane is concerned.

*So ordered.*