## OWENS v. MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY

(No. 1952; November 24, 1936; 63 Pac. (2d) 1006)

For the appellant, there was a brief by *C. R. Ellery* and *Bard Ferrall,* both of Cheyenne, and oral argument by *Mr. Ferrall.*

For the respondent, there was a brief by *James A. Greenwood* and *W. O. Wilson,* both of Cheyenne, and oral argument by *Mr. Greenwood.*

BLUME, Justice.

This is an action by the plaintiff W. H. Owens to recover from the defendant his commission on the sale of certain real estate of the defendant in the city of Cheyenne to one John C. Arp. Aside from admitting that John C. Arp purchased the property, the answer is a general denial. The case was tried to a jury, who returned a verdict in favor of plaintiff in the sum of $450. From the judgment rendered thereon, the defendant has appealed. The parties will be referred to as in the case below.

The testimony material on this appeal is as follows:

The property involved herein is the so-called "Old Telephone Building" in the city of Cheyenne. It was listed with plaintiff for sale about March 1st, 1933, pursuant to agreement with Mr. Titus, then defendant's superintendent. The price given was $25,000. The agency was not exclusive. Mr. Titus dropped out of the negotiations about the middle of March, and the negotiations with plaintiff were then continued on behalf of the defendant by Mr. Ayersman, who extended plaintiff's time to find a purchaser until the latter part of March. Within that time, namely, on March 23, 1933, plaintiff, after various efforts to find a purchaser, submitted an offer to defendant made by John C. Arp, a customer procured by the plaintiff, the offer being for the sum of $15,000. Arp gave a check for the sum of $500 as part of the purchase price. He was ready, able and willing to buy at that price. The offer so made by Arp was not accepted at that time, and Mr. Ayersman testified that it was rejected. The property was then listed with Riner & Company, an exclusive agency being given for sixty days. The price given that company, too, was $25,000. They did not consider Arp a good prospect at that price, and offered to split the commission with plaintiff, if the property were sold to him. Ayersman communicated this fact to plaintiff, and tried to get him to accept the proposi-

tion, but he refused. Riner & Company did not sell the property within the time mentioned. But asking Arp some time thereafter, perhaps in September, 1933, whether he would pay the sum of $15,000, he agreed to do so, and actually bought the property at that price about that time.

The plaintiff testified, aside from other matters, as follows:

"Q. Will you state what your reply was to Titus when he stated that the company wanted twenty five thousand dollars? A. I told him I would submit any offer that I obtained for their approval or rejection. Q. What did he say? A. He said that would be all right." He further testified that it was agreed between them that any agent working on the sale of the property should submit his prospective purchasers to the defendant and that no other agents, whom the defendant might employ, should interfere with such prospective purchaser so submitted.

Mr. Titus, superintendent of the defendant, testified as follows:

"Bill Owens came to my office in the new telephone building and stated that if I would give him the right to sell the old telephone building for two weeks, he could sell it. I told him then that the price of the property was Twenty-five Thousand Dollars ($25,000.00) and he would have to get more to get his commission out of it. Twenty-five thousand dollars cash to us in other words. He said that was fine and that he would sell it. Some time later he came in and told me that he could get Sixteen thousand dollars ($16,000.00) for the old telephone building. I said, 'Bill, the price as I told you is $25,000.00 and we will not cut the price. If you get that, okay. If not, it is all off.' He came in the second time and said, 'I wish you would let me have a little more time.' I said 'how much more time do you want' And he said, 'well, a couple of weeks or three weeks,' And I said, 'all right. I am leaving but I will turn this over to Mr. Ayersman, my state plant superintendent.' And I also told Mr. Ayersman to give Owens a reasonable length of time, two or three weeks,

even four if he wanted to go ahead with this $25,000 deal. When I came back, it was not sold and I told Mr. Ayersman to put it in the hands of C. W. Riner and Company, which he did. * * * Q. Did you ever authorize the plaintiff in this action to sell the old telephone property (the property in controversy) for any sum less than $25,000, plus his commission? A. No. Q. Did he (plaintiff) make an offer to your company on behalf of Mr. Arp? A. Yes. Q. What was that offer? A. He told me he could sell it to Arp for $16,000. Q. Did you accept that offer. A. No. Q. What, if anything, did you say to the plaintiff at that time? A. I told him that the property was listed with him at $25,000 cash and that he was to get his commission over and above that sum. Q. Did you authorize the plaintiff to sell it for any other sum or amount than as you have just stated? A. No."

There was other testimony on behalf of defendant which was introduced to show that plaintiff was not the procuring cause of the sale. But it is not necessary, for the purposes of this case, to set it out.

1. It is assigned as error that the court erred in overruling the demurrer filed to the petition, and it is claimed that the latter does not state facts sufficient to constitute a cause of action, in that the terms of the brokerage contract and the performance of the contract by the agent are not sufficiently shown. In that respect plaintiff alleged (slightly abbreviated) :

Par. 5. That on or about March 10, 1933, the plaintiff was, by the defendant, employed to solicit and obtain a purchaser for said real estate and that said defendant did duly list said property for sale with plaintiff, as such real estate broker.

Par. 7. That plaintiff did solicit and interest said John C. Arp as a prospective purchaser of said building and plaintiff did produce said John C. Arp to the said defendant as ready able and willing to purchase said property."

It was further alleged that Arp made an offer which was accepted and that a deed for the property was issued to him on October 12, 1933.

It is clear from this that the theory of the plaintiff is that he was employed merely to obtain a purchaser for the property, not to obtain one at a certain price or under certain conditions of sale. The performance of such contract was, we think, sufficiently alleged. A broker may be employed for a limited purpose in connection with the sale of property, and the contention of counsel for defendant to the contrary is not correct. A number of illustrations of that are given by the authorities cited in 9 C. J. 590-591; and see Bancroft on Code Pleading, Sec. 1070; Miller v. Stevens, 23 Ind. 365, 55 N. E. 262, and other cases hereinafter cited. It is claimed, however, by counsel for the defendant that the clause in paragraph 5 to the effect that "said defendant did duly list said property for sale" implies that it was listed on certain and definite terms; that these terms have not been set forth, and that hence the allegations of paragraph seven are not sufficient to show performance on plaintiff's part. Farquharson v. Lightner, 96 Kans. 117, 150 Pac. 565, and Brown v. Gilpin, 75 Kans. 773, 90 Pac. 267, are cited. It is true that in these cases the court stated that the term "list" implies the invoking of services for finding a purchaser upon certain terms. In the Farquharson case the defendant denied that plaintiff was employed at all, and the court referred to the "listing" merely as implying employment. In the Brown case the question was as to whether "listing" land for sale with an agent gave power to enter into a contract with the purchaser. Hence these cases cannot be considered as authority herein that plaintiff by referring to the listing of the property with him meant to and did thereby modify the other allegation as to the specific duties which plaintiff was to perform. An owner may "list" property with an agent, and merely require him to find a purchaser. That, in fact, was the situation in Griffin v. Rosenblum, 46 Wyo. 40, 23 P. (2d) 348. It was said

in the case of Glentworth v. Luther, 21 Barb. 146, speaking of the duty of a broker:

"In the nature of things he can do nothing more than find a party who will be acceptable to the owner and enter into a contract of purchase with him. * * * That the commission is due to the broker at that time is manifest from the fact, that when this is done the broker has exhausted his power to act. He can do no more, unless he is clothed with a power of attorney to convey the property and receive the purchase money. And having thus done all that it is possible to do, he has certainly done all that he can be held to have contracted to do. The plaintiff had therefore earned his commission as soon as the defendant and Mootry signed the contract."

It follows that the contention above mentioned must be overruled.

2. (A) It is argued that the evidence in the case is not sufficient to warrant any judgment for the plaintiff. We have found this question to be an exceedingly difficult one. No cases involving facts exactly like those in the case at bar have been cited, and we have found none. Whether or not a commission is due to a broker depends largely upon the contract entered into between him and the owner. Kimmel v. Skelly, 130 Cal. 555, 62 Pac. 1067, 1068. If he has not complied with his contract; if he has not accomplished or done what he has undertaken to do, while his authority exists, he is not, in the absence of some fault of the owner, entitled to a commission. He must fulfill, if not prevented by the owner, the duty undertaken by him, and within the time given him, or he is not entitled to any compensation. 9 C. J. 587, 588; note, 139 A. S. R. 241; note 26 A. L. R. 784. If, on the other hand, a broker has done that which he was employed to do, he becomes entitled to his commission. Westlund v. Smith, (Mass.) 196 N. E. 147; Schneider v. Stewart, (Okl.) 49 P. (2d) 186; Hugo v. Weekley, 64 W. Va. 210, 61 S. E. 360; 15 L. R. A. N. S. 1262. Courts, and the parties herein,

speak of an ordinary contract of a broker (without special terms) and a special contract—that is to say, a contract with special terms. They do not agree what the contract herein actually was. Counsel for the defendant have argued the case solely from the standpoint that the contract herein was a special one, namely, that the plaintiff should make a sale or find a purchaser at the price of $25,000 and no less, and that within a definite period of time. There can be no doubt that if the parties make a special contract, one, for example, to the effect that no commission will be due unless the property in question shall be sold for a definite price, and on definite terms, or that a definite result shall be reached, no commission will be due if these terms are not complied with, unless they are waived by the owner. Restatement of the Law of Agency, Sec. 447 and comment thereon; Note 43 A. L. R. 111, under subd. IV; Knochelman's Adm'r. v. Knochelman, 242 Ky. 662, 47 S. W. (2d) 534; Kirby L. Co. v. West, (Tex. Civ. App.) 236 S. W. 449; Murphy v. Livestock Co., 26 Wyo. 455, 187 Pac. 187; Watson v. Odell, 58 Utah 276, 198 Pac. 772. But it must be observed that a material distinction must be drawn— applicable throughout—between cases in which no sale is made, and those in which one is actually made by the owner to the customer produced by the broker. Harris v. Owenby, 58 Okl. 667, 160 Pac. 596. And a waiver of the condition as to terms is readily and generally implied, where the owner proceeds to negotiate with the customer furnished by the broker and concludes a sale satisfactory to him. Note 43 A. L. R. 1104; note 15 L. R. A. N. S. 273; 44 L. R. A. 350, note g. "If this were not so," states 4 R. C. L. 322, "it would be very easy for an unscrupulous person having property for sale to get all the benefits of the broker's services in bringing the property under the notice of buyers and introducing them, by the simple method of

fixing the price at a figure which he knows no person would give, and the reduction of which he is prepared to accept." The rule is stated somewhat differently, but to the same effect, in 4 R. C. L. 313, where it is said:

"Where a broker instead of procuring a person who is ready, able and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counter offer more or less at variance with that of his employer, the latter is at perfect liberty either to accept the proposed party upon the altered terms or to decline to do so. If he accepts, he is legally obligated to compensate the broker for the services rendered."

Hence, as stated in other cases, a broker is entitled to his commission when he produces a purchaser who buys at a price satisfactory to the owner (unless the price has been made a condition of the payment of a commission). Wareham v. Atkinson, 215 Iowa 1096, 247 N. W. 534; Home Banking etc. Co. v. Baum, 85 Conn. 383, 82 Atl. 970; Weiss v. Gaines, (Tex. Civ. App.) 51 S. W. (2d) 428; Clements v. Stapleton, 136 Iowa 137, 113 N. W. 546.

These statements are, however, frequently imperfect. It depends on the contract between the parties. Often, as at least to some extent in the case at bar, the element of time enters into a case in conjunction with the element of price. And the majority of the courts hold that where a broker is employed to sell property at a definite price and within a definite time, and the broker fails to perform his contract, and fails to complete the sale within the time given him, the owner, unless he waives the requirement as to time, may treat the contract at an end and may, after the expiration of the time limited, at least when he acts in good faith, himself sell the property to some one else, or to the customer produced by the broker, on different, or, according to some of the authorities, even

on the same terms as those offered through the broker. Note 26 A. L. R. 784, particularly pages 789-795; note 21 L. R. A. N. S. 328; 4 R. C. L. 305-306; 9 C. J. 602. Part of the cases cited by counsel for defendant are within this rule: Price v. Cocke, 23 Ga. App. 578, 99 S. E. 47; Westerman v. Peer Ins. Co., 197 Mo. App. 278, 195 S. W. 78; Homes Realty Co. v. Silcox, 194 Mich. 59, 160 N. W. 465; Naylor v. Ashton, 20 Cal. App. 544, 130 Pac. 181; Burt v. Stringfellow, 48 Utah 330, 159 Pac. 527. The same rule has been held to apply, when the agency is for no definite time and when, before the broker has accomplished what he undertook to do, the agency is terminated in good faith, at least after the agent has been given a reasonable time to perform his services. That rule is laid down in the remainder of the cases cited on the point under discussion by counsel for defendant. Grant v. Dalton, 120 Me. 350, 114 Atl. 304; Bodine v. Lumber Co., 128 Ark. 347, 194 S. W. 226; C. Robert Peter & Co. v. Fix, 225 Ky. 198, 7 S. W. (2d) 1040; Pagum v. White, 250 Mass. 437, 156 N. E. 711; Good v. Robinson, 194 Mo. App. 453, 194 S. W. 955; Surbaugh v. Dawson, 185 Ark. 406, 47 S. W. (2d) 591; Howard v. Street, 125 Md. 289, 93 Atl. 923; Garner v. Pierce, 116 N. Y. S. 155. The theory of these cases is that an owner has the right to stand upon the literal terms of his contract, and that the broker is not entitled to a commission unless he has fully complied with his contract, within the time of his agency. Some of the courts, believing it harsh to deprive a broker of his commission when he is the procuring cause of a sale, have construed the terms as to time liberally, holding that if a purchaser has been found within the time fixed, the fact that the sale is completed subsequently will not deprive the broker of his commission. Cases note 26 A. L. R. 795-797; 9 C. J. 608. We need not decide here what the rule should be under a contract

which clearly, and not merely by interpretation, provides that the *sale* should be made within a definitely fixed time, or a reasonable time. We shall, however, hereafter, consider the last mentioned cases in connection with a contract such as plaintiff claims to have been made.

(B) And so we must pass on to consider what the contract herein is, or may be construed to be, and the rules of law applicable in such case. Plaintiff claims that while Mr. Titus wanted $25,000, yet at the same time, plaintiff was but required to find a purchaser—that is to say, get an offer—for the property, and send the customer to the defendant for negotiations between the latter and the defendant thereafter. We think that the jury were authorized to find that to be true—at present passing over the element of time. Plaintiff testified that he stated to Mr. Titus that he would submit any offer which he received for defendant's consideration, and that Mr. Titus agreed to that. This would seem to indicate that the obtaining of an offer of $25,000 was not one of the conditions of the agency. It was further agreed, according to plaintiff, that the customer submitted by plaintiff should be his, and that no other agent was to interfere with him. If, as defendant claims, no offer other than for $25,000 would be considered, and that plaintiff's authority was confined to obtaining such an offer, an agreement that no one else was to interfere with the customer furnished by plaintiff would have little, if any, meaning; for if he furnished one who would pay $25,000, that offer presumably would have been accepted immediately; further negotiations would have been unnecessary, and interference on the part of others would substantially have been out of the question.

A contract such as mentioned is, of course, entirely different from one where the agent is authorized to find a purchaser, or make a sale, only for a definite

price or upon definite terms. Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011. A broker, it has been said, "whose undertaking merely is to find a purchaser * * * at a price which shall be satisfactory to the seller when he and the purchaser meet, is in reality only a 'middleman' whose duty is performed when the buyer and seller are brought together." Stewart v. Mather, 32 Wisc. 344; Barry v. Schmidt, 57 Wisc. 172, 15 N. W. 24; 46 Am. Rep. 35; Johnson v. Hayward, 74 Nebr. 166, 107 N. W. 384; 5 L. R. A. N. S. 112, 122. In the case of Miller v. Stevens, 23 Ind. App. 365, 55 N. E. 262, the court said:

"There is a marked difference between a contract by a broker to furnish the purchaser to his principal and a contract to effect a purchase or sale. In the first instance the broker has earned his commission when he had introduced and brought together the principal and the proposed purchaser between whom a deal is perfected, and in the second instance it is the duty of the broker to perfect a sale upon the prescribed terms submitted to him by the principal before he is entitled to his commission."

The case was approved, and the same rule stated in Olcutt v. McClure, 50 Ind. App. 79, 98 N. E. 82, and W. P. Patterson Co. v. Temple, 94 Ind. App. 135, 180 N. E. 21. In the case of Desmond v. Stebbens, 140 Mass. 339, 5 N. E. 150, the court said:

"The employment was by an oral agreement, and upon the evidence, it was competent for the jury to find that it was the ordinary case of the employment of a broker to procure a purchaser. Under such a contract, the broker is entitled to compensation, if he substantially effects a sale by procuring and introducing a purchaser to whom the owner sells the land."

And the same court in Johnstone v. Cochrane, 231 Mass. 472, 121 N. E. 529, speaking of a similar contract, stated:

"A broker earns a commission when he brings the property which he is employed to sell to the attention

of a third person and then turns that person over to his employer and the property is sold as the result of negotiations between the two so begun."

So it is held in Matuszewski v. Grisius, 118 Pa. Super. 196, 180 Atl. 130, that "a real estate broker, unless the contract for employment provides otherwise, is entitled to his commission; i. e., the right to the commission accrues, when he produces for his principal a satisfactory purchaser who contracts in writing with the principal for the purchase of the property, at a price satisfactory to the owner." A number of cases are cited. And when an offer made by the purchaser is accepted and a sale is actually made, that is conclusive of the fact that the sale is satisfactory to the owner. Home Banking Co. v. Baum, 85 Conn. 383, 82 Atl. 970. See also Frost v. Haux, 15 Wyo. 353, 89 Pac. 568. So the court in Jennings v. Overholt, 186 Mo. App. 505, 172 S. W. 449, speaking of the ordinary brokerage contract, stated:

"In any event, if plaintiff's efforts resulted in finding a customer with whom defendant could deal and were the procuring cause of the trade ultimately consummated, plaintiffs had earned their commission. Perry v. Edelen, 164 S. W. 645; Lane v. Cunningham, supra (171 Mo. App. 17, 153 S. W. 525); Grether v. McCormick, 79 Mo. App. 325."

In Martin v. Fegan, 95 App. Div. 154, 88 N. Y. S. 472, a case seemingly closely in point here, the court stated:

"It appears in the evidence * * * that the plaintiff was instructed to get an offer for the place, and this the defendant admits. In view of the instruction of the defendant to the plaintiff to get an offer, the implied contract was that the defendant would pay the commission upon the sale price in event of the defendant's agreeing upon a figure with some person introduced by the plaintiff, and selling to him."

See also Allen v. Meredith, (Mo. App.) 32 S. W.

(2d) 103, holding that when the property was actually sold, the procurement of the purchaser was equivalent to "selling" the property.

(C) As above stated, we temporarily left out of consideration the element of time involved in the contract between the parties herein. That contract is not quite the ordinary brokerage contract, as we understand that term. It is limited in time. That is conceded. The effect thereof must, accordingly, be determined. The necessity for inquiry is limited herein, for it is conceded that a customer who ultimately purchased was found and procured for defendant within the time fixed by the contract; and there is left only to be determined whether, in order to entitle plaintiff to a commission, the offer of Arp should have been accepted and the purchase completed within the same time. The authorities heretofore cited, while seemingly implying the negative, do not specifically deal with that point. It is dealt with, however, in 4 R. C. L. 306, where the rule is stated to be as follows:

"If the terms of employment merely require the broker to find or introduce a purchaser within a certain time * * * he is legally entitled to remuneration if he induces a person to begin negotiations with his employer before the expiration of the period named, even though such negotiations do not materialize until after the time limit is reached."

In the case of Bossart v. Coal Mining Company, 206 Pa. 63, 119 Atl. 731, plaintiff was employed on August 27, 1919, as a broker to "interest" a purchaser in property owned by the defendant within ninety days. Plaintiff interested one Cook late in September, 1919. But Cook then flatly refused to buy. Later one Drum, another agent, showed the property to Cook, and the latter finally bought the property on December 17th, 1919, nearly a month after the expiration of the ninety days above mentioned. The court held that it was for

the jury to determine as to whether or not plaintiff was the procuring cause of the sale. There was some evidence that plaintiff continued his efforts in the meantime. As against that, it appears in the case at bar that Arp gave his check for $500 and was ready, willing and able to buy the property from that time until he finally bought it. The court held also that the question as to whether the transaction was completed without a "break" was for the jury. The case was followed in Walker v. Randall, 85 Pa. Super. Ct. 443, and the following instruction, given to the jury, was approved:

"If the terms of employment merely require the broker to find or introduce a purchase within a certain time, he is legally entitled to remuneration if he induces the person to begin negotiations with his employer before the expiration of the period named, even though such negotiations do not materialize until after the time limit is reached."

We have heretofore mentioned cases which hold that if a broker finds a customer within the time given him, the fact that the sale is completed subsequently will not deprive him of his commission. If the contract here was as claimed by plaintiff, namely, that he was to find a purchaser within a certain time, at a price satisfactory to the owner, it is clear that the contract does not, in terms, require acceptance of the offer and the completion of the sale unless that be by construction. Now, if a broker is the procuring cause of a sale—and the jury in this case were clearly warranted in finding that to be true—then we see no good reason why we should, by mere interpretation, insert in a contract conditions and terms not clearly inserted therein by the parties themselves. In other words, where the owner receives and appropriates to his own use, the benefit of the efforts of a broker, no sound reason exists why courts should construe the contract

strictly in favor of the owner. It is held that wherever there is justification for treating the broker as the procuring cause of sale, his services are regarded as highly meritorious, and the law leans to that construction of the contract and to that interpretation of the facts of the case and the acts of the parties which will best secure to the broker the payment of his commissions. Finnerty v. Fritz, 5 Colo. 174; Duncan v. Borden, 13 Colo. App. 481, 59 Pac. 60; Leech v. Clemens, 14 Colo. App. 45, 59 Pac. 230; Stewart v. Mather, 32 Wis. 344; Sessions v. Improvement Co., 57 Cal. App. 1, 206 Pac. 653. Following this rule, it would seem that we should not hesitate to hold, under plaintiff's theory of the contract, that the rule stated in Mechem on Agency (2nd Ed.), Sec. 2439, should apply. That rule is stated by the author to the effect that "if the purchaser is found within the time limited, it is immaterial that the actual sale was not fully consummated until afterwards." In S. E. Crowley Co. v. Myers, 69 N. J. L. 245, 55 Atl. 305, the agency was limited to ten days. The sale was made about a week or ten days thereafter. It was contended that in view of the fact that the sale was not made during the time of the agency, the plaintiff could not recover. The court, however, said:

"Upon exceptions duly taken, it is now contended that the agent was not shown to have become entitled to his commissions under the contract, because the sale was not effected within the ten days limited. But this is a misconception. The agent becomes entitled to commissions when he procures a purchaser able and willing to buy on terms satisfactory to the owner. He earns his pay when the owner accepts and contracts with the purchaser procured by him."

The situation in F. D. Griswold v. Pierce, 86 Ill. App. 406, was similar. And the court said:

"Appellee must be regarded as furnishing a pur-

chaser ready, willing and able to buy. He was, therefore, entitled to compensation, and the fact that he did not bring the parties to terms within the time limited by the letter of March 7th, does not defeat his right to recover." A number of cases are cited.

It may be noted, that the factor considered vital was the fact of bringing the parties together; that is to say, the factor of being the procuring cause of the sale. That, too, was considered the vital factor in the case of Jaeger v. Clover, 89 Minn. 490, 95 N. W. 311, where—just as is claimed by plaintiff in the case at bar—the broker, plaintiff, was employed to procure a purchaser for defendant's property. The purchase price was fixed at the sum of $8000. It was sold for the sum of $6750. The court held that the essential question was whether plaintiff was the procuring cause of the sale, and that it was for the jury to determine whether the sale was brought about independently of the efforts of the broker after the agency was terminated.

In the case of Cole v. Crump, 174 Mo. App. 215, 156 S. W. 769, an option for the purchase of land was given to one Cole, and the owner agreed to pay the broker a commission "on condition that the sale is made to the said Cole." The first option expired without purchase. A second option expired, also without purchase. A sale was made four months after its expiration. It did not appear that the broker negotiated the second option or participated in the final negotiations. The court held the broker entitled to a commission and in the course of the decision stated as follows:

"The case seems to have been tried on the part of defendants on the theory that though plaintiff interested George J. Cole in the land and induced him to say he would take it, he is not entitled to recover commissions on account of the sale subsequently consummated, for the reason it was not made during the time the option contract existed. * * * Obviously this is an

erroneous view, for though plaintiff did not personally obtain the extension of the option and though he was not actively participating when the deal was finally closed and though the final conveyance was made after the option had expired, as an enforcible obligation, he is nevertheless entitled to his commissions if it appears to the satisfaction of the jury that he was the procuring cause of the sale and defendants received the benefit of his services thereabout. * * * Where the sale is actually made through the act of the owner closing the deal with the customer of the real estate agent, it is not essential to the right of recovery by the agent as for commissions to show the sale was completed within the period of time prescribed in the contract of employment or an option on the property, provided it sufficiently appears that the agent initiated the transaction of purchase within the prescribed time and may therefore be regarded as the procuring cause."

Similar in effect are Harvey v. Winters, 1 La. App. 283; Engleman v. Anderer, 10 La. App. 136, 121 So. 194; Wilkinson v. Martin, 8 Carr. & Payne 1, 173 Engl. Repr. 373.

(D)   So far, then, we think it is clear that we could not say that defendant's contention should be sustained. But there is a further rule of law which must be considered, namely, that of continued negotiations. The authorities heretofore cited by us do not directly bear upon the point. In most of those instances the sale was perfected within a comparatively short period after the purchaser was furnished by the broker. In the case at bar about four or five months intervened. It is stated in 9 C. J. 602 as follows:

"However, to entitle a broker to a commission, where the contract concluded differs from that which the broker was authorized to negotiate, the negotiations commenced by the broker must have continued uninterruptedly, and he must have been actively instrumental throughout in causing the parties to consummate the transaction."

The rule as stated, on its face may possibly be construed to apply only to cases where a broker has a special contract, and not a contract such as is claimed by the plaintiff. We do not think, however, that it is so limited. It has been mentioned and has been assumed to apply in cases where the contract was the ordinary brokerage contract as in Bossart v. Coal Mining Co., supra. And it would seem rightly so. The rule appears but to state in a different way the principle that the broker must be the procuring cause of a sale, for as stated in Annett v. Sherer, 142 Ore. 494, 20 P. (2d) 803, "the expression 'procuring cause' as used in the books and as legally defined, refers to the cause originating a series of events which without breaking their continuity results in the prime object in the employment of the agent." See also Bail v. Glantz, 78 Cal. App. 49, 248 Pac. 258, and Words and Phrases. And that a broker must be the procuring cause of a sale seems to be a rule of universal application, subject to the exception of a special agreement to the contrary. 9 C. J. 611. Even under a contract such as plaintiff claims, the owner has in mind *some* price at which he is willing to sell. He cannot be forced to sell at any price which may be offered. Handley v. Shaffer, 177 Ala. 636, 59 So. 286. He may reject the offer, and if that is final and definite, and in good faith, and negotiations cease, there is no reason for holding that he should be liable for a commission if, perchance, he makes a sale subsequently. Unfortunate or other circumstances may compel him to sell at a sacrifice. He may be forced, ultimately, to sell for three-fifths of what he considers a fair price, and which, in fact, may be such. Such proportion may correspond with the offer which a broker at some previous time submitted to him, and which, in fairness and justice, the latter should never have considered. To compel the owner, under the circumstances men-

tioned, to pay a commission, in addition to the great sacrifice on the price, would be in the nature of a penalty. The rule that the price at which a man sells is "satisfactory" should not be carried too far. If, for instance, to use an extreme illustration, an owner has been offered three fifths of the price which he considers fair, and he rejects the offer, and he sells the property, however, at that price and to the same customer, five years after the offer was first made, without intervening negotiations through the broker, it would hardly be in accordance with justice to compel him to pay the broker a commission, merely because originally he found the customer. But, of course, where the intervening time is comparatively short, and where there is a doubt whether the negotiations were definitely and finally broken off in good faith, and where justice to the broker and to the owner are in the balance, the question as to whether or not the broker should be allowed a commission may, often at least, become a question for the jury to solve. The crucial and doubtful point in this case is, accordingly, the application herein of the rule now under consideration.

The text above quoted, from 9 C. J. 602, is inaccurate. The use of the term "uninterruptedly" is, when not qualified, not sustained by the cases cited, or by any authority, so far as we have found. Woods v. Stevens, 46 Mo. 555; Jennings v. Overholt, 186 Mo. App. 505, 172 S. W. 449; Copeland v. Wagstaff, 9 Dom. L. R. 13, cited by the text, do not seem to refer to the rule at all. It is quoted verbatim in Dancy v. Baker, 206 Ala. 236, 89 So. 450, and in Ward v. Morrow, 15 F. (2d) 660, 665. In neither of these cases was the term "uninterruptedly" involved or considered. In Garnett v. Gunn, 206 Ala. 471, 91 So. 382, the court, referring to the rule, speaks of "definite and bona fide interruption." In Re Burrows Lumber Co., 181 Fed. 909, also cited in the text, it is merely said: "But the

question after all depends on the continuity of the transaction." In Cleveland-Cliffs Iron Co. v. Gamble, 201 Fed. 220, the court stated that there must not be a "fatal interruption." The text is probably taken from Gold v. Serrel, 6 Misc. 124, 26 N. Y. S. 5, which merely states as a fact in that case that the negotiations continued uninterruptedly; it states no rule of law in regard thereto. There are cases directly bearing on the question of "interruption." In Arnett v. Sherer, 142 Or. 494, 20 P. (2d) 803, the court said:

"While it is true that the broker must be the active agent in procuring the purchaser and inducing him to complete the sale, the negotiations need not be uninterrupted, but the continuity of the broker's agency in bringing the transaction to a conclusion must be established."

In Geiger v. Kiser, 47 Colo. 297, 304, 107 Pac. 267, the offer made by a purchaser procured by a broker was rejected, as is claimed to be true in the case at bar. The court said:

"The defendant listed the property with plaintiff for sale. It appears that plaintiff interested the party or parties in the property who subsequently purchased it; that he notified the defendant of their offer; that, although at first defendant refused to consider the lots offered in trade, he did within a short time accept them, and concluded a sale of the property to the parties whom the plaintiff, through his efforts as an agent, had secured as prospective purchasers."

In Miller & Damron v. Dalton, 247 Ky. 339, 57 S. W. (2d) 33, the broker in question was employed in April. He claimed, as plaintiff claims here, that he was but to procure a purchaser. He procured one. Negotiations were commenced, but dropped on July 9. They were reopened on August 17, 1922. The court said:

"It is apparent that appellee's efforts were the procuring cause of the contract of sale. He brought the purchaser and seller together and initiated the nego-

tiations that resulted within a reasonable time in the sale of the property. According to his version of the contract, he accomplished what he undertook to perform when he procured a purchaser and introduced him to the appellants. His duties then ceased, and as the negotiations thus commenced finally resulted in a sale of the property, he is entitled to his commission. The contract was neither indefinite nor uncertain, nor is there any evidence of abandonment by the appellee. The fact that he took no part in the negotiations after he brought the parties together did not constitute abandonment, since it was not a part of his duty to consummate the deal. * * * Here the appellee procured and introduced to appellants a prospective buyer, and under his version of the contract this constituted upon his part a performance of all the duties required of him. He procured a purchaser promptly, and only a short period of time elapsed between the beginning of negotiations and the consummation of the deal. While the matter was temporarily dropped after the prospective buyers' second visit to Owensboro, the negotiations were soon renewed, and within a few days the sale was made."

In Cleveland-Cliffs Iron Co. v. Gamble, supra, the negotiations were interrupted from May, 1901, until the summer of 1902. The broker was, nevertheless, allowed to recover a commission. The court held that there must be a casual relation between the broker's services and the sale; that while mere nearness of time is not important, plaintiff must show a direct connection between offer and sale; that it is not fatal that the owner at the same time carries on negotiations with other prospective purchasers; and that so long as the negotiations are merely suspended and not in fact destroyed, the direct connection above mentioned is not broken. See also Bossart v. Coal Mining Co., supra.

Can it be said, in view of the light shed on this case by the foregoing authorities, that the negotiations were entirely destroyed, when Arp's offer was not ac-

cepted in April, 1933, or were they merely suspended? It is true that defendant's testimony shows that the offer procured by plaintiff was "rejected." We are not prepared, however, to hold that the jury were compelled to accept that statement in its unqualified sense. Mr. Ayersman himself testified that after Arp's offer had been "rejected" and he had concluded to give an exclusive agency for two months to Mr. Wallick, Mr. Wallick proposed to split commissions with plaintiff, if the sale were made to Arp, and that he communicated that proposition to plaintiff and wanted him to accept it. Plaintiff further testified that Ayersman "said he would try to protect me on John Arp when he gave this exclusive listing to this other real estate dealer." These facts clearly show that after the so-called "rejection" of Arp's offer, there remained in Mr. Ayersman's mind the thought of at least a possibility that Arp's offer would be accepted, or, in any event, that a sale would be made to him on some basis which would be satisfactory. The time intervening between Arp's offer in April and its acceptance four or five months later was not so long that we could say as a matter of law that it definitely broke the connection between the offer and the sale. Arp's offer was definite and certain. Judging from the evidence, he was at all times ready and willing to enter into a contract on his own terms. The defendant knew that fact. Perhaps it thought that it could turn an exclusive agency over to Riner & Co. without endangering an ultimate sale to Arp on the latter's terms. On the whole, therefore, while the point is not free from doubt, we are not prepared to say as a matter of law that the jury were not justified in finding that the negotiations were merely suspended in April and not definitely rejected. The instant contention must, accordingly, be overruled.

3. The defendant's theory is that the contract entered into between plaintiff and defendant was a spe-

cial contract, namely, that he was to procure a purchaser at $25,000 and no less and within a definite period of time. The testimony of Mr. Titus is to that effect. And if that was the contract, and defendant acted in good faith, then, as heretofore shown, plaintiff is not entitled to recover herein. Defendant offered instructions to be given to the jury under its theory of the contract. The court refused to do so. It evidently tried the case on the theory that whenever a broker is the procuring cause of a sale, he is entitled to a commission, without reference to the terms of the contract. And counsel for the plaintiff seems to labor under the same impression. That, of course, is wrong. Many expressions are found among the authorities that an agent is entitled to his commission when he is the procuring cause of a sale. But these will be found to have been made under the assumption that special provisions of a contract have been complied with, or have been waived, or when no special contract existed. A broker must comply with his contract the same as anyone else. He must, in the absence of an agreement to the contrary, be the procuring cause; but even if he is, that does not dispense with the fulfillment of his contract in other respects. As stated in 9 C. J. 588: "It matters not how great may have been his efforts nor how meritorious his services; if he is unsuccessful in accomplishing the object of his employment, he is not entitled to compensation. The right to compensation depends on performance of the stipulations and conditions of the contract of agency." And as stated in Phinizi v. Bush, 129 Ga. 479, 59 S. E. 529, "if the duty of the broker under his employment is not merely to procure a purchaser, but also to do some other act, the broker suing for commissions, after showing his employment, must also show that he performed the obligation undertaken by him, unless performance was prevented by the fault of the principal." "Undoubt-

edly," as stated in Leventritt v. Colwell, 21 Cal. App. 597, 132 Pac. 627, "the right of a broker to recover commission must be measured primarily by the terms of his employment." See also Mabry v. Bailey & Howard, 5 Ala. App. 383, 59 So. 383; Howard v. Barrow, 77 Cal. App. 4, 245 Pac. 808; Fultz v. Wimer, 34 Kans. 576, 9 Pac. 316. The court, accordingly, had no right to ignore the evidence adduced on behalf of the defendant, and the latter was entitled to have the case submitted to the jury on its theory, in so far as supported by the pleadings and the testimony. 64 C. J. 597. We need not inquire as to whether or not the specific instructions asked were correct in all things, for counsel for the plaintiff does not question them from that standpoint, but contends that the refusal of the instructions was justified on another ground. He states:

"The instructions offered by appellant and refused by the court relate to conditions that might appropriately appear if there was in the case a question of whether or not a special contract had been entered into instead of a broker's contract. The requested and refused instructions are grounded upon the law found in the Murphy case; but appellant's position does not fit the facts in that case. It was not entitled to instructions relating to a special contract without having alleged and proven the terms of such a contract to be in fact the agreement between respondent and appellant."

Counsel for plaintiff is in error. In the Murphy case (cited supra), no question as to the necessity of pleading a special contract was involved. There are no cases, so far as we know, and none have been cited by counsel, which hold that when the plaintiff pleads a certain contract, it is necessary for the defendant, in order to show the allegation wrong, to plead what the contract was. So far as we have been able to find, the authorities are all the other way, and there are many of them. In 9 C. J. 643 the general rule is stated to be that

"where the general issue or general denial of the contract is pleaded, defendant may show facts in denial of the contract as claimed by plaintiff, and may also prove the contract actually made." To that effect are: Grover v. Birmingham, 191 Ia. 512, 182 N. W. 787; Kaufman v. Young, 32 Ga. App. 135, 122 S. E. 822; Herndon v. Williams, (Tex. Civ. App.) 233 S. W. 544; L. A. Clark Co. v. Lumber Co., 22 F. (2d) 551; Thompson v. Van Natta, (Tex. Civ. App.) 277 S. W. 711; Bowman v. Rahmoeller, (Mo.) 55 S. W. (2d) 453; Wade v. Nowells, 78 Colo. 585, 243 Pac. 542.

It follows that the judgment below must be reversed, and the cause remanded for a new trial. It is so ordered.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.